LENDELL CAIN, Employee, Respondent, v. ROBINSON LUMBER COMPANY, Employer, HIGHWAY CASUALTY COMPANY, Alleged Insurer, Appellant, No. 44829—295 S. W. (2d) 388.

Court en Banc, November 12, 1956.

*Luke, Cunliff & Wilson* for appellant; *Dearing & Matthes* of counsel.

*Samuel Richeson* and *Edgar & Edgar* for employer.

[389] LEEDY, C. J.—This workmen's compensation case was consolidated for the purposes of argument. with Harris v. Pine Cleaners et al., No. 44873, concurrently decided herewith. Here the Industrial Commission made an award in favor of the employee Cain and against appellants O. A. Robinson and R. B. Robinson, d/b/a Robinson Lumber Company as employers and Highway Casualty Company as insurer. The insured claimed that the policy covering the liability of the employers had been cancelled prior to the accidental injury. The Commission found to the contrary. The Circuit Court affirmed, and the employer and insurer appealed to the St. Louis Court of Appeals where the judgment of the Circuit Court affirming the award was reversed and remanded with directions. See 273 S.W. 2d 741.

The opinion in the Harris case on the present submission settles the jurisdictional question (which prompted transfer of the case to this court), and sustains the holding of the St. Louis Court of Appeals that the Commission had the power and authority to determine whether or not the policy had been cancelled; but in view of the employers' supplemental brief in this court, which more fully develops the question on which the opinion of the Court of Appeals

turned, we are constrained to disagree with the action of the Court of Appeals in upsetting the finding of the Commission that the policy had not been cancelled.

The policy was issued as of September 13, 1951, for a period of one year. It provided that the premiums were based on the entire remuneration paid to the employees of the insured. The amount of the premium was to be paid in quarterly installments, and was subject to adjustment to be made quarterly. The original policy stipulated that it was subject to the following conditions, among others:

"This policy may be canceled at any time by either of the parties upon written notice to the other party stating when, not less than ten days thereafter, cancelation shall be effective. The effective date of the cancelation shall then be the end of the Policy Period. * * * Notice of cancelation shall be served upon this Employer as the law requires, but, if no different requirement, notice mailed to the address of this Employer herein given shall be a sufficient notice, and the check of the Company, similarly mailed, a sufficient tender of any unearned premium."

Appended to the policy was a "Periodical Premium Adjustment Endorsement," reading as follows:

"Effective September 13, 1951, *and notwithstanding anything contained in the policy to the contrary,* it is understood and agreed that the premium stated in the policy to which this endorsement is attached, is an estimated advance deposit premium which the Assured agrees to pay on or before inception date of the policy and is to guarantee prompt payment of the earned premiums for each period designated herein. The advance deposit premium will be retained by the Company until termination of the policy, at which time the advance deposit premium will be credited to the last and final settlement only. In consideration of the advance deposit premium stated, it is understood and agreed that this policy is issued and accepted by the Assured subject to a quarterly premium adjustment based upon payrolls expended during each three month period from the effective date of the policy, the first report is to become due on the 13th day of December and future reports to become due on [390] the last day of each following third month. Payroll reports must reach the Company on or before the 15th of the month *following* the close of each reporting period for the purpose of computing the earned premium during such period, and the Assured shall immediately pay to the Company the premium earned thereon, based upon the rate or rates stated in the policy.

"*If the Assured shall fail to make such statement of wages expended or pay such earned premiums as provided in the foregoing paragraphs such failure entitles the Company, at its option, and upon proper written notice to the Assured, to cancel the policy.*

"Nothing herein contained shall be held to vary, waive, alter or extend any of the Delarations, Schedule of Coverages, Insuring Agreements, Exclusions and Conditions of the policy mentioned in this endorsement, other than as above stated." (Emphasis ours.)

The cancellation is claimed to have been made January 3, 1952, effective January 14, 1952, "for non-payment." The accident occurred February 21, 1952.

On December 1, 1951, the insurer mailed the employers a form called "Audit Adjustment" covering the period from September 13, 1951, to December 1, 1951," whereon were blanks to be filled in showing the amount of the actual payroll and the amount of the earned premium computed according to the rate (a certain percentage) shown thereon, and directing that the same be completed, signed and returned "with check to cover earned premium within ten days." On December 20, 1951, the insurer mailed the employers a "Warning Notice" calling attention to the fact that the audit was past due, and stating that unless the same was received on December 26, 1951, "notice of cancellation will be sent." It not having been received, on January 3, 1952, the insured mailed to the employers a "Cancellation Notice" reciting that the policy (describing it) "is hereby cancelled as of 12:01 A.M., Standard Time, the 14th day of January, 1952. * * * REASON: Non-payment."

It is unnecessary to further develop the facts, but reference is made to the opinion of the Court of Appeals for a more detailed statement thereof. That opinion, however, does not make reference to the cancellation provisions of the "Periodical Premium Adjustment Endorsement" (which we deem controlling), but the ruling now under examination appears to have been based on the provisions of the original policy hereinabove set forth.

It is to be noted that under the express provisions of the endorsement, pay roll reports were timely if received by the insurer "on or before the 15th of the month *following* the close of each reporting period" (the earned premium thus computed being then "immediately" payable). The close of these particular employers' first reporting period was fixed by the endorsement as the 13th of December and future reports were to become due on the last day of each following third month, so that (insofar as the present controversy is concerned) January 15, 1952, became the critical date for creating defaults on the part of the employers under the contract; but notwithstanding this fact, the purported cancellation occurred prior to the expiration of such time.

This is a proper case for the application of these familiar principles governing insurance contracts: First, that the courts will attempt to construe the policy and the endorsements thereon as one contract, and, if possible, give effect to each and every provision thereof. Soukop v. Employers' Liability Assur. Corp., 341 Mo. 614, 108

S.W. 2d 86; 44 C.J.S., Insurance, § 298, p. 1196. Second, that if the language used in an endorsement and that used in the general provisions of the policy on the same subject are in conflict, the language in the endorsement will prevail. Barnett v. Prudential **[391]** Ins. Co.,. 239 Mo. App. 670, 194 S.W. 2d 317; Givens v. Aetna Life Ins. Co., (Mo. App.) 59 S.W. 2d 761; Linenschmidt v. Continental Cas. Co., 356 Mo. 914, 204 S.W. 2d 295; Marshall's U. S. Auto Supply v. Maryland Cas. Co., 354 Mo. 455, 189 S.W. 2d 529. Third, if there is doubt or uncertainty as to the meaning of the language used, and it is susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted. Corbin v. Fidelity Health & Acc. Mut. Ins. Co., (Mo. App.) 265 S.W. 2d 440; Soukop v. Employers' Liability Assur. Corp., supra; 44 C.J.S., Insurance, § 297 (c), p. 1166.

We agree with the contention of the employers, and accordingly hold that the proper construction of the cancellation provisions here involved is that the insurer may cancel according to the procedure outlined in the conditions stipulated in the original policy at any time for the reasons permitted in the endorsement, and cannot cancel unless and until the conditions precedent set forth in the endorsement arise. There having been no default whereon to effect cancellation based on the non-payment provisions of the endorsement, it follows that the attempt so to do was abortive and wholly ineffectual because premature and unwarranted.

The award included the following: "For Medical Aid (See attached Findings of Fact and Rulings of Law), the sum of $*Unknown*." There was no evidence of any medical expense, and so the Court of Appeals properly held the finding in this regard was not supported by the evidence, and not being for any determinable amount was therefore unenforceable.

To meet the situation created as a consequence of the latter holding, the judgment of the circuit court should be and it is reversed, and the cause remanded with directions to the trial court to reverse the award and remand the cause to the Industrial Commission with directions to said commission to enter a new award in favor of the claimant to be in all respects the same as the one heretofore entered except that portion thereof in relation to medical aid, which shall be deleted. All concur.