Grace Baer ADAMS, Plaintiff-Respondent,

v.

MANCHESTER INSURANCE & INDEMNI-TY COMPANY, a Corporation, Atkis Boyd and Samuel G. Boyd, Defendants,

Manchester Insurance & Indemnity Company, a Corporation, Defendant-Appellant.

No. 31631.

St. Louis Court of Appeals.

Missouri.

Nov. 17, 1964.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 21, 1964.

Ray B. Marglous, Clayton, for defendants Atkis Boyd and Samuel Boyd.

Goldenhersh, Goldenhersh, Fredericks, Newman & Lane, Leo M. Newman, Frank J. Lane, Jr., St. Louis, for defendant-appellant.

Daniel P. Reardon, Richard F. Pier, St. Louis, for plaintiff-respondent.

GEORGE P. ADAMS, Special Commissioner.

On May 14, 1960, plaintiff sustained injuries in an accident between her car and a 1953 Cadillac ambulance owned by defendant Atkis Boyd and driven by his employee, defendant Samuel Boyd. On January 3, 1962, in the Circuit Court of St. Louis County, plaintiff recovered a judgment against Atkis Boyd in the sum of $4500.00.

On March 15, 1963, in the Circuit Court of the City of St. Louis, in this equitable action brought under the provisions of Section 379.200 (all statutory references are to RSMo 1959, V.A.M.S.), plaintiff recovered judgment against Atkis Boyd's automobile liability insurance carrier, defendant Manchester Insurance & Indemnity Company. Manchester appeals.

For some time prior to December, 1959, Atkis Boyd had been operating an ambulance service and doing business as "Boyd Bros. Undertaking Company." For "quite a number of years" one Louis J. Hannibal, an insurance broker, had been Boyd's agent handling his insurance business. Hannibal had procured an automobile liability insurance policy with the Missouri Union Insurance Company. This company "went into receivership" and Boyd asked Hannibal to place the policy he had with the Missouri Union Insurance Company in some other company. Thereafter, Hannibal "placed" an insurance policy through an Ed. Weinstein with the defendant Manchester Company. This policy was "placed" with Weinstein " * * * specifically with an en-

dorsement indicating that there was no emergency coverage."

Under date of December 22, 1959, an automobile liability insurance policy, No. A3577, was issued "Boyd Bros. Undertaking Co." by Manchester, effective December 13, 1959 to June 13, 1960. The vehicles named in the policy were a "1951 Cadillac Fordor Sedan" and a "1953 Cadillac 5 Dr. Ambulance." The latter vehicle was the one involved in the accident with plaintiff's car.

Under the same date, and at the same time the policy was issued, the following endorsement was attached:

"ENDORSEMENT

This endorsement, effective 12:01 A.M. DECEMBER 13, 1959, forms a part of policy No. A3577 issued to BOYD BROS. UNDERTAKING CO. by MANCHESTER INSURANCE & INDEMNITY COMPANY

DESCRIPTION OF AUTOMOBILE: 1953 CADILLAC 5 DR. AMBU-LANCE

MOTOR #5386–22092

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED THAT COVERAGE HEREUNDER DOES NOT APPLY IF USED AS AN EMERGENCY VEHICLE.

END. #1

ED WEINSTEIN
Authorized Representative
12/22/59 cp"

The exact method of the distribution or delivery of the several copies of the policy does not appear from the evidence. However, the foregoing endorsement, as well as additional endorsements numbered 2, 3 and 4, dated January 14, 1960, February 29, 1960 and March 23, 1960, were attached to the copy of the policy which Manchester retained and the copy which the broker Hannibal had. The only evidence relating to the copy of the policy in the hands of Boyd was Hannibal's testimony that after the accident, and after Boyd had received word from Manchester that he "wasn't covered," he, Hannibal, saw Boyd's copy and at that time Endorsement #1 was not attached, but Endorsements #2, #3 and #4 were.

Hannibal testified that the premium that Boyd paid for the policy " * * * was without emergency coverage * * *." An employee of Manchester testified that the company did not write "an ambulance vehicle" and if the endorsement had not been attached, Manchester would not have accepted the policy.

On May 13, 1960 one Willie Blackman was a patient at St. Louis County Hospital. An "emergency room record" contained the following: "May 13th. Increasing delusions of grandeur for past one month. Schizophrenia. * * * Treatment Dr. Lohr advised to go to jail, and then to Malcolm-Bliss in A.M. * * *," and, "May 14th. Patient brought back from jail. Patient has hallucinations. Impression Schizophrenia. To Mental Hospital."

Around 9:30 A.M. on May 14th, the St. Louis County Hospital ordered an ambulance from the Boyd Ambulance Company and told them to pick up Blackman and to hurry because it was an emergency. Defendant Samuel Boyd drove the ambulance and an attendant, Bennie Williams, went with him. They got to the Hospital around 10:00 A.M. When Samuel Boyd got to the hospital, he signed an ambulance trip ticket which identified Blackman's illness as "an observation case" and said that the illness was "serious."

Samuel Boyd and the attendant left the hospital with their patient in the ambulance. According to a police report and a statement taken by a claim adjuster, both of which were offered in evidence by Manchester and admitted in their entirety, without objection, the driver and the attendant stated: that about 10:30 A.M. the ambulance was being driven east on Chouteau Avenue, as it approached Spring Avenue; that the red light on the ambulance was "going all the time" and before the driver got to that intersection he started blowing his siren; that the traffic on Chouteau was stopped because of a red traffic light; that as the driver came up behind a stopped car and with the red light and siren on, he drove the ambulance into the westbound lane of Chouteau, stopped and sounded the siren; that plaintiff made a left-hand turn off of Spring from the south into the westbound lane of Chouteau and struck the stopped ambulance head-on; that the red light and siren on the ambulance were going at the time the ambulance was hit; that after the accident some lady "came back" and gave the police a statement telling them she heard the siren and then the crash and she came back; that the police took the patient on to Malcolm-Bliss Hospital.

In a statement to the police, plaintiff said she made a left turn onto Chouteau from Spring, keeping her eye on traffic, and when she looked up she saw the ambulance, applied her brakes and collided with the ambulance.

The police report also stated that plaintiff was given a summons " * * * charged with failure to yield to emergency vehicle * * *."

At the trial below, plaintiff testified that she stopped on Spring before turning left onto Chouteau for "a complete cycle of lights" (traffic); that she made a left turn onto Chouteau, went "around" three lanes of traffic and " * * * no sooner than I made the turn I saw this vehicle and hit my brakes * * *"; that she was stopped at the time of the accident; that the windows on her Triumph sport car were "pushed

forward," were open. On direct examination, she testified she did not hear any siren and did not see a flashing red light.

On cross-examination she testified that after the accident there was a red light on the ambulance. She also testified, without objection by her counsel, that at the accident scene she heard one of the policemen say, "You can turn that siren off now, Buddy. It's not needed."

Plaintiff employed counsel and filed suit in the St. Louis County Circuit Court against Samuel G. Boyd and Atkis Boyd. After Manchester declined to defend the suit a "consent judgment" was taken against Atkis Boyd alone for $4,500.00 on January 3, 1962.

On January 11, 1962 the instant action was filed in the Circuit Court of St. Louis City, Missouri. While defendants Atkis Boyd and Samuel G. Boyd were present in person in the Courtroom at the trial below, they were not represented by counsel; nor did they testify.

At the conclusion of the trial, and on March 15, 1962, the trial court made "Findings of Law and of Fact" wherein it found: that defendant's policy was in full force and effect; that the endorsement " * * * invalidating coverage while the vehicle was being used in emergency service * * *" was never a valid part of the policy; that the accident occurred; that Samuel Boyd was agent of Atkis Boyd; that Samuel Boyd was negligent and plaintiff sustained injuries as a proximate result of his negligence; that plaintiff was not contributorially negligent; that under the doctrine of respondeat superior Atkis Boyd was legally responsible for plaintiff's injuries and damages; that the ambulance was " * * * not making an emergency run * * *" at the time of the accident; that plaintiff sustained "serious injuries"; that the "consent judgment" was a valid judgment, entered into in good faith and based on legal liability and was reasonable in amount; that there was no collusion or fraud involved in the taking of said consent judgment; that there was

nothing done by plaintiff or Boyds to afford a valid reason for Manchester to " * * * disclaim coverage, refuse to investigate said accident, defend said suit or pay such aforesaid judgment"; that the St. Louis County judgment was binding on Manchester and must be paid under Section 379.200.

On March 15, 1963, judgment was entered against Manchester for $4500.00 and costs. Following the overruling of Manchester's after-trial motions, it has appealed.

■■ In this equity action we are required by Rule and Statute, Civil Rule 73.01 (d), V.A.M.R. and Section 510.310, subd. 4, to review the case upon both the law and the evidence and determine the credibility, weight and value of the testimony, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Long v. Kyte, Mo., 340 S.W.2d 623, 628 (5). However, where as here, the entire record consists of writings, documents and, with one exception, uncontradicted oral testimony, the same deference is not accorded the trial court as would be if the evidence consisted largely or entirely of disputed oral testimony. Meyers v. Smith, Mo., 375 S.W.2d 9, 13(1); In re Toler's Estate, Mo., 325 S.W.2d 755, 759(3); Halstead v. Mustion, 166 Mo. 488, 66 S.W. 258, 260(5). The exception mentioned is the testimony of plaintiff that she did not see a red light or hear a siren.

Defendant Manchester's initial complaint is in two parts. First, that the trial court erred in its Finding of Law and of Fact numbered 2, that the " * * * endorsement invalidating coverage while the vehicle was being used in emergency service was never a valid part * * * " of the policy, and, second, in its Finding of Law and of Fact numbered 8, that the " * * * ambulance was not making an emergency run at the time of the accident. * * * " These will be approached in their inverse order.

■■ In this action, Manchester may assert any defense against plaintiff which it might have asserted as a defense in an action brought against it by the Boyds. Meyers v. Smith, supra, 375 S.W.2d page 13(2); Donlon v. American Motorists Ins. Co., Mo. App., 147 S.W.2d 176, 178(2). The defense of "no coverage" is, of course, one which might have been asserted in an action brought by the Boyds had they, or either of them, paid the judgment. In asserting such defense, however, Manchester has the burden of proving that "emergency vehicle coverage" was excluded and that the vehicle was in fact being used as an emergency one. Kelso v. Kelso, Mo., 306 S.W.2d 534, 536(2), 71 A.L.R.2d 258.

There is really little dispute between the parties as to the law to be applied in determining whether the ambulance was being used as an emergency vehicle. In addressing the trial court in connection with an objection, plaintiff's counsel stated: "The whole question is whether this is an emergency run. Whether the driver had reason to believe this was an emergency."

■ There are, apparently, no Missouri cases passing on the precise question presented here providing a test to determine when a private ambulance is an emergency vehicle.

Our statutes define an emergency vehicle as, among others, "Any privately owned vehicle operated as an ambulance when responding to emergency calls." Section 304.022 subd. 3(2). This is not helpful, however, in determining what constitutes an "emergency call" or an "emergency."

Plaintiff states, and correctly, that "whether an emergency exists is to be determined from all the circumstances," and whether there was actually an emergency "was a question of fact for the trier of the facts."

In the case of McElwee et al. v. Mfrs. Casualty Ins. Co., Court of Civil Appeals of Texas, 221 S.W.2d 381, p. 383, cited by plaintiff, the trial court gave this instruction:

"The test as to whether the ambulance in question was 'being used to

answer an emergency call' depends upon (1) *the nature of the call that was received* and (2) *the situation as presented to the mind of the driver at the time he received the call* and (3) *the manner in which he drove and operated the ambulance in response to such call,* and not upon whether an emergency in fact existed." (Emphasis and parenthetical numerals supplied.)

So also, in the California case of Head v. Wilson et al., 36 Cal.App.2d 244, 97 P.2d 509, 514, it was said:

> " * * * It cannot be believed that the legislature intended that the character and extent of an emergency must be investigated and determined in advance before the privileges accorded to an authorized emergency vehicle are available to the driver of an ambulance. It may be conceded that a publicly owned ambulance is sometimes used for other purposes than responding to an emergency call. This very fact makes it necessary to determine in a particular case whether it is then being used in responding to such a call. That fact must, and does, depend upon the nature of the call that is received and the situation as then presented to the mind of the driver of the vehicle, and not upon whether an emergency in fact then exists as this may be disclosed by *future developments.* * * * "

We think that the test used in the McElwee case is fair and adequate.

What then was the " * * * nature of the call that was received * * * " by Samuel Boyd? It was " * * * to hurry to the County Hospital and pick up a patient because it was an emergency. * *." When Boyd got to the hospital he signed an ambulance trip ticket showing the "illness" was "serious." Certainly the " * * * situation as presented to the mind of the driver at the time he received the call * * * " and as substantiated by the notation "serious" on the ambulance trip ticket, justified his conclusion that it was truly an emer-

gency. He approached the intersection of Spring and Chouteau with his siren on and his red light flashing and drove into the westbound lane against traffic that would be coming in the opposite direction. The "manner in which he drove and operated the ambulance in response to such call" indicated a state of mind responding to an emergency. He was exercising some of the privileges only accorded the "driver of an emergency vehicle" under Section 304.022, viz., operating his vehicle other than "upon the right half of the roadway" as required by Section 304.015, subd. 2; was sounding his siren and had his red light on, which he was not permitted to do " * * * except when said vehicle is responding to an emergency call, * * * " Section 304.022, subd. 4 (1); and, according to plaintiff's testimony, was proceeding " * * * past a red or stop signal * * *," contrary to Section 304.022, subd. 4 (2) (b).

Plaintiff's testimony that she did not see a red light or hear the siren, besides being negative in character, is disputed in part by her own cross-examination when she testified that she *did* see a red light on the ambulance, after the accident.

The testimony of the lady who "came back" and gave the police a statement that she heard the siren and then the crash, and the policeman whom plaintiff heard say, "You can turn that siren off now, Buddy. It's not needed," and the statements of Samuel Boyd and Bennie Williams all contradict plaintiff's recollection.

The evidence is overwhelming and Manchester has sustained the burden of proving by a preponderance or greater weight of the credible evidence that at the time of the accident the ambulance was being " * * * used as an emergency vehicle * * *," and within the exclusion of Endorsement No. 1.

The trial court erred in its Finding of Law and of Fact numbered 8.

What then of Finding of Law and of Fact numbered 2 that the endorsement excluding

emergency coverage was never a part of the policy?

The evidence stands uncontradicted that Louis Hannibal had handled Boyd's insurance and had been his agent for that purpose "quite a number of years." When the Missouri Union went into receivership, Boyd requested Hannibal to place the policy in another company and gave no directions as to what company, leaving that entirely up to Hannibal. Neither did Boyd direct him to obtain emergency coverage on the ambulance. Hannibal contacted Weinstein, who in turn apparently contacted Manchester for the policy. Hannibal "placed" the policy " * * * specifically with an endorsement indicating that there was no emergency coverage" and the premium paid " * * * was without emergency coverage * * *." Manchester would not have accepted the policy if it had not had such endorsement. The policy with the limiting endorsement was what Hannibal "understood" was " * * * in accordance with Mr. Boyd's understanding."

■ Hannibal was "first employed" by Boyd "to procure insurance" for him and in ordering the policy in question from Weinstein, Hannibal was Boyd's agent and his act was the act of Boyd. H & H Manufacturing Company v. Cimarron Insurance Company, Mo.App., 302 S.W.2d 39, 43(3, 5). Therefore, Manchester's policy of insurance No. A3577, with an endorsement excluding coverage if the 1953 Cadillac was being "used as an emergency vehicle" was exactly what Boyd ordered and paid for.

It is interesting to note that there is not one word of evidence that Boyd in fact ever expected greater coverage.

Plaintiff does not seriously, or in any event effectively, dispute that the policy as contracted for did not include coverage while the vehicle was used as an emergency vehicle. She seeks to support the trial court's finding that the endorsement was never a valid part of the policy on two grounds. She says that the " * * *

accident was covered under the insurance policy * * *" because (1) " * * * the emergency exclusion was never communicated to the policyholder," and (2) " * * * there was no consideration to support the endorsement cutting down policyholder's coverage."

Attending the second contention first—it should be kept in mind that if she seeks to avoid the exclusion on the ground that there was no "consideration" for "cutting down" the coverage, she would have the burden of proving that Boyd had in fact originally had a "coverage" that was "cut down" by the endorsement.

The only testimony in the entire record relating to whether the premium charged included an emergency vehicle coverage was that of Hannibal, who said that it did not. Manchester's underwriter said she did not have the 1959 rates before her, but that an "ambulance" rate listed in a manual would not "necessarily" afford full coverage since "that is left up to the Company." There is no evidence that the premium paid included "emergency coverage"; and to the contrary, the only unequivocal testimony is that of Hannibal who said that it did not.

The evidence shows that Boyd bought and paid for a policy under which liability for an emergency vehicle was excluded from the outset. The endorsement was as much a part of the policy as any condition or agreement printed in the regular form; the same as if it appeared under the section entitled "Exclusions." There was no "cutting down" on the coverage. The "coverage" commenced and continued the same.

The endorsement itself dispels any question of "cutting down" without consideration. It recites "for consideration of the premium charged, it is understood and agreed that coverage hereunder does not apply if used as an emergency vehicle." The "consideration" paid did not include emergency coverage. There never was a broader coverage contracted for and, there-

fore, never anything to be "cut down" by the endorsement.

■ As to the other contention of plaintiff that the emergency exclusion was never communicated to the policyholder, the simple answer is that it was. Delivery to, or receipt of, the policy, with the endorsement attached, by Hannibal, Boyd's agent, was "communication" to the policyholder.

■ However, a more fundamental question is involved here. By the contract of insurance, Manchester never obligated itself to assume payment of any loss arising out of the use of the 1953 Cadillac as an emergency vehicle. Boyd had no right to expect it to do so. Whether he ever knew of the terms of the policy as issued, there was nothing that he had done toward ordering the policy that would have permitted him to expect such coverage. The policy as issued was just what was ordered, contracted and paid for.

If there was an oversight in failing to attach the endorsement to the original or copy of the policy that came into Boyd's hands, the liability of the Company was not enlarged. An error of omission to attach the endorsement should be no different than say a mistake in typing in the amount of coverage. Here Boyd ordered and paid for 5,000–10,000 bodily injury liability. If a mistake had been made in preparing the policy and the figures "$50,000–100,000" were shown as the amount of bodily injury liability, no one would contend that plaintiff could have recovered $45,000 from Manchester.

There is no evidence in the record that Boyd got anything less than what he ordered. However, if he had claimed that he had instructed Hannibal to obtain emergency coverage, and there was a mistake in not obtaining such coverage, "such was the mistake of" Boyd and "not of defendant insurer." H & H Manufacturing Company v. Cimarron Insurance Company, supra, 302 S.W.2d page 43(5).

■ Also, if for some reason, presently undisclosed, Manchester was estopped to deny coverage or had waived its right to rely on the exclusion, such estoppel or waiver should have been pleaded and proved by plaintiff. Hankins v. State Farm Mutual Automobile Insurance Company, Mo.App., 379 S.W.2d 829, 830(1); Cheatham v. Kansas City Life Ins. Co., Mo.App., 241 S.W.2d 47, 51(3).

The trial court erred in its Finding of Law and of Fact numbered 8.

We find and hold that at the time of the accident the 1953 Cadillac ambulance was being "used as an emergency vehicle" and was not covered by the policy of insurance and Manchester is not liable for the payment of the St. Louis County judgment.

In view of the disposition that we have made of Manchester's first assignment of error, consideration of other assignments is unnecessary.

This cause should be reversed, with directions to the trial court to enter judgment for defendant Manchester Insurance & Indemnity Company, and the Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by ADAMS, Special Commissioner, is adopted as the opinion of the Court.

The cause is reversed with directions to the trial court to enter judgment for defendant Manchester Insurance & Indemnity Company.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.