The EMPIRE FIRE AND MARINE INSURANCE CO., Plaintiff-Respondent,

v.

Peter D. BRAKE and Gary Keller, Defendants-Appellants.

No. 25515.

Kansas City Court of Appeals, Missouri.

Oct. 4, 1971.

Thomas M. Sullivan, Downey, Sullivan & Fitzgerald, Kansas City, for appellant Brake.

Michael J. Drape, Knowlton & Drape, Kansas City, for appellant Keller.

William H. Sanders, James Borthwick, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for plaintiff-respondent.

DIXON, Commissioner.

This case, recently re-assigned, is an action for declaratory judgment on a liability insurance policy issued to Patricia Keller. Empire Fire and Marine Insurance Co. is the plaintiff. The defendants are the driver, Gary Keller, and third parties injured in an accident. The plaintiff pleaded the issuance of a policy to Patricia Keller as named insured and the occurrence of a collision on September 15, 1966 within the policy period while the automobile was operated by defendant Gary Keller, the 22-year-old husband of Patricia Keller. The plaintiff's contention is that no insurance was afforded by its policy to Gary Keller by reason of his exclusion from the policy by name and age. The trial court declared there was no coverage afforded to Gary Keller, and the defendant, Gary Keller, and one defendant-claimant, Peter Brake, have appealed.

The basic issues between the parties involved the issuance and terms of the policy. We relate as much of the evidence as is necessary for an understanding of the circumstances of the issuance of the policy and the dispute concerning its terms.

On May 19, 1966, Gary Keller purchased a new 1966 Chevrolet automobile. He was at the time 22 years of age and married to

Patricia A. Keller. On May 20, 1966, Patricia Keller made application to the Herb Davis Insurance Agency for an insurance policy. The Herb Davis Agency was acting as a broker and was not an agent of the plaintiff-company. The Fred Miller Company was the general agent for Empire Fire and Marine. Patricia was informed by the broker that no insurance could be obtained for Gary. A recent cancellation of his prior policy with plaintiff-company because of traffic violations and accidents afforded the reason for the inability to obtain coverage for him. Patricia was also advised that a "standard policy" could be obtained for her at regular rates if Gary were excluded from the coverage. She advised the broker she wanted that insurance. She signed an application containing a description of the automobile purchased by Gary Keller, and in the space provided for the names of other drivers, the following language appears: "Non Exclude Husband Gary W. Keller." The application was made on a blank bearing the name of the Fred Miller Company, and there was testimony that the date stamped on the reverse side of the application, to-wit: May 23, was the date upon which the application was received by the Fred Miller Company. The policy of insurance of the plaintiff, Empire Fire and Marine Co., was issued May 26 with an effective date of May 20.

The evidence disclosed that *at the time the policy was forwarded* by Fred Miller Company *to the Davis Insurance Agency* for delivery to the applicant, Patricia Keller, the policy had attached two documents, one eliminated from the coverage of the policy any male driver under 25 years of age (Exhibit No. 5), and the other provided that coverage should not apply to any claim arising while the automobile was being driven or operated by Gary W. Keller (Exhibit No. 4).

The broker applied to the total premium for the policy the refund due on the cancellation of Gary Keller's previous policy in the amount of $119 which represented approximately one-fourth of the new premium. The documents offered in evidence have a signature purporting to be that of Patricia A. Keller under date of June 1. There is evidence from which the court could have found that her signature appeared thereon. These documents contain a date on the reverse side thereof which the testimony showed was the date of receipt by the Fred Miller Company, and that date is June 3, 1966.

On September 15, 1966, Gary Keller, driving the described vehicle, was involved in the automobile accident which gives rise to the claims of injury for which plaintiff seeks relief on its coverage.

Gary Keller's deposition was in evidence; and in this deposition, he testified he did not know that Patricia had applied for and received the policy of insurance here in question. When questioned concerning the issuance of the policy by the Herb Davis Insurance Agency, Gary Keller said, "Well, she has got insurance for herself somewhere. I guess it was with The Empire Fire and Marine, * * * ." He did not recall to whom he reported the accident of September 15, but thought it was an agent.

The home office copy of the policy was in evidence, and the portions of the policy pertinent to the appellant's contentions are the "omnibus" clause and the clause relating to *"changes."* Condensed to their pertinent provisions, these read as follows: "DEFINITION OF INSURED * * * With respect to the insurance for bodily injury liability * * * the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile, * * * provided the actual use of the automobile is by the named insured of such spouse or with the permission of either. * * *

\* \* \* \* \* \*

CHANGES * * * nor shall the terms of this policy be waived or changed, except

by endorsement issued to form a part of this policy, signed by a duly authorized representative of the company."

The marital history of Patricia Keller and Gary Keller had been stormy, there having been at least one divorce petition filed prior to the date of the issuance of the policy. After the date of the issuance of the policy and on September 7, 1966, Patricia Keller filed a divorce petition which bore the usual affidavit dated September 2. In the divorce petition, she alleged that she and her husband had separated in July of 1966.

The deposition of Gary Keller is equivocal as to his living arrangements in the early part of September of 1966, but he insisted that his residence was the same as that of Patricia although he conceded he may not have been there all of the month of September. As he expressed it, he "never really moved out" and considered his "residence" to be that of his wife, leaving his clothes and other belongings there although he admitted to having been away from there a portion of the time.

Respondent argues from the qualifying language of the omnibus clause "if a resident of the same household" Gary was not covered on the date of the collision because not "residing" with Patricia. We note that respondent plaintiff in the declaratory judgment action did not plead this claim in its amended petition, nor did the trial court deal with the question by findings in relation thereto. This appears to be an afterthought by respondent to justify the holding of the trial court, and in the view we take of this case and because of the equivocal nature of the evidence on the point, we do not determine this case upon respondent's contention that Gary Keller was not a resident of the same household as Patricia at the time of the collision for which coverage is sought. The trial court determined the issues in favor of the plaintiff on the theory that Gary was excluded, specifically by name and generally by age, thus construing the policy by giving effect to Exhibits 4 and 5 which unquestionably exclude Gary if they were part of the policy and are valid and enforceable. We now consider that ruling.

Appellants' attack upon the trial court's ruling is that under the "omnibus clause" of the policy, Gary became an "insured" and could not be removed from the coverage without "his consent" and without any consideration for such removal from coverage.

This contention is postulated upon a determination that Gary, at the moment of the issuance of the policy, became an *omnibus insured*. Necessary to acceptance of appellants' contention would be our determination that documents 4 and 5 were not a part of the policy at the time of its issuance.

It is not clear from the briefs and oral argument whether the appellants contend that the documents were not attached to the policy at the time of its delivery or whether they are arguing that they had no legal effect until signed by Patricia. All of the evidence indicates they were attached to the policy as originally issued by the agent and delivered to the broker, and no evidence indicates to the contrary.

Appellants' argument must, therefore, be taken to mean that the documents being dated and signed by Patricia Keller on the 1st day of June could not have been effective as a part of the policy upon issuance. This can be so only if the unsigned documents physically attached to the policy had no force and effect until they were signed by Patricia.

Although not cited by either party, Adams v. Manchester Insurance & Indemnity Company, Mo.App., 385 S.W.2d 359 determines this question adversely to appellants' contention. In Adams, the plaintiff, a judgment creditor, sought recovery on the judgment from Boyd, the insured, and Manchester, Boyd's liability carrier. Boyd, an undertaker, had been operating an ambulance service. Boyd requested *his own*

*broker* to place liability insurance for him. A policy was issued by another agent on behalf of Manchester. This policy had attached a document which unequivocally excluded coverage if the insured vehicle was being used as an emergency vehicle.

The trial court, in written findings, declared the vehicle was not being used as an emergency vehicle and that the limitation of coverage was invalid. Manchester claimed the vehicle was being used as an emergency vehicle and that the coverage was limited to exclude such use.

The appellate court determined that the vehicle involved in the accident was being used as an emergency vehicle and thus squarely confronted the issue of coverage under the exclusion.

The judgment creditor plaintiff urged that the "exclusion cut down" coverage without "consideration" and that such a limitation was not "communicated" to the insured.

The opinion dealt with the contention respecting the "cutting down of coverage" by pointing out that the coverage must first attach and that if it never attached, no issue of "cutting down" or consideration was involved.

The court, in Adams, then analyzed the evidence relating to the issuance of the policy and determined that Boyd and his broker had requested the coverage as written, including the exclusion.

The court said, l.c. 366, "By the contract of insurance, Manchester never obligated itself to assume payment of any loss arising out of the use of the 1953 Cadillac as an emergency vehicle. Boyd had no right to expect it to do so. Whether he ever knew of the terms of the policy as issued, there was nothing that he had done toward ordering the policy that would have permitted him to expect such coverage. The policy as issued was just what was ordered, contracted and paid for."

The opinion then specifically reverses the finding of the trial court that the ex-clusion was invalid and rules that the judgment of the trial court in favor of the judgment creditor against the insurance carrier should be reversed.

In Adams, supra, the court relied upon oral testimony as to the terms of the policy, and there was no written application. The trial court finding we are reviewing had even stronger evidentiary support. The signed application of Patricia Keller specifically and unequivocally demonstrates that she wanted Gary Keller excluded from the coverage. The oral testimony supports and does not conflict in any way with that application. In these circumstances and upon the authority of Adams, supra, we hold that the contract of insurance issued by plaintiff, Empire Fire and Marine, included as a part of the contract of insurance the two documents excluding coverage to Gary Keller. Insurance coverage having never arisen as to him, no question of "cutting down" of that coverage without consideration nor of any rights relating to "cancellation of coverage" are involved in this case. Coverage never existed and the postulate of appellants' argument falls. We need not and do not deal with the question of "consideration" or the "elimination" of Gary from "coverage." He was, in fact, never an insured.

The ruling in Adams v. Manchester Insurance & Indemnity Company, supra, is in accord with the majority rule in the United States and with the prior Missouri case of Pennsylvania Casualty Co. v. Suburban Service Bus Co., Mo.App., 211 S.W.2d 524, 528. See Couch on Insurance 2d, § 4:24, p. 180, § 4:25, p. 182, 128 A.L.R. 1034, 1039. Dunn v. Traders & General Ins. Co., Tex. Civ.App., 287 S.W.2d 682, 687. Anderson v. Aetna Casualty and Surety Company, Tex.Civ.App., 432 S.W.2d 151, 153. In the circumstances of this case and the issues here involved, we consider the authorities cited controlling.

■ Appellant has urged that the application of the refund of Gary's premium refund is determinative of his "coverage."

He was in that respect at least a "draftee," if not a "volunteer." He testified "she took care of that stuff." Payment alone is not sufficient to create coverage. Edwards v. Zahner, Mo., 395 S.W.2d 185.

■ It is insisted that since the language of the omnibus clause conflicts with the documents excluding coverage, ambiguity arises.

It is unquestionably true and the settled law of Missouri that, where the language of a policy is clearly and unequivocally limited by a document attached to the printed policy by the insurer or its authorized agents and pursuant to the agreement of the parties, the subsequent limitation will be given effect, and no ambiguity is created because of the conflict with the printed portions of the policy. Cain v. Robinson Lumber Company, 365 Mo. 1238, 295 S.W.2d 388. Givens v. Aetna Life Ins. Co., Mo.App., 59 S.W.2d 761, 763. Barnett v. Prudential Ins. Co., 239 Mo.App. 670, 194 S.W.2d 317. Thus, in this case, we see no basis for discussion of cases cited by appellant dealing with construction of ambiguous policies.

We have been careful in our nomenclature to avoid descriptive terms in identifying Exhibits 4 and 5 since confusion can easily arise by referring to these exhibits as "endorsements" or "riders." It is common knowledge that insurance contracts are written upon standard forms which, to meet the intent of the parties, often require change. Steinzeig v. Mechanics and Traders Insurance Co., Mo.App., 297 S.W. 2d 778, 781. When those changes are made at the time of the inception of the policy, they are often made by attachments to the policy which are sometimes described as "riders," "slips," or "endorse-

ments." The word "endorsement" literally means a "writing upon" and easily implies later attachment and the necessity for signature. "Rider," on the other hand, has more of a connotation of a separate document attached to or resting upon the principal document. So, too, with "slip." Such descriptions resolve no problems.

It seems to be the general rule that when such documents (whatever descriptive language is used to denominate them) are attached to the policy at the time of its issuance with authority of the company and in accordance with the agreement of the parties, they are part of the contract of insurance whether signed or unsigned.[1] This because the courts have determined from all of the documents forming the contract, or extrinsic proof, that these papers express the intent of the parties.[2] Cain v. Robinson Lumber Company, supra. Givens v. Aetna Life Ins. Co., supra. 128 A.L.R. 1034.

On the other hand, those documents which are attached, or any notations or interlineations which in point of time are after the original issuance of the insurance contract, are almost universally held to require the signature of the insured or other proof sufficient to show assent to the modification or alteration of the terms of the original agreement and consideration. Rice v. Provident Life & Accident Ins. Co., 231 Mo.App. 560, 102 S.W.2d 147.

■ Appellants' second contention is that the attempted exclusions are void as against the public policy of this State as expressed in the Motor Vehicle Safety Responsibility Act, specifically 303.190(4). They cite Perkins v. Perkins, Mo.App., 284 S.W.2d 603. This case, extensively reviewing precisely the issue here raised,

1. See Couch on Insurance 2d, Vol. 2, § 4:24, p. 180, § 4:25, p. 182. Anderson v. Aetna Casualty and Surety Co., supra.

2. The recent St. Louis Court of Appeals case, American Family Mutual Insurance Group v. Clagett et al., Mo.App., 472 S.W.2d 669 holds that reference to en-

dorsement on the face sheet of the policy does not make the endorsement a part of the policy *where the endorsement was not attached.* This is an "ambiguity" case, and the court apparently did not believe the evidence was sufficient to show an intent to exclude coverage.

holds that absent "certification" of a policy required by Section 303.210 RSMo 1969, the provisions of that act relating to certain requirements of coverage do not apply. We are cited to no other statute declaring the policy of this State to require the striking down of such an exclusionary clause. We are invited to judicially formulate such a policy by the argument of appellant. Even if convinced of the soundness of such a policy, no basis here exists for the formulation of such a sweeping judicial declaration. We adhere to the sound authority of Perkins and hold that these endorsements are valid when the contract includes them, absent certification under section 303.210, supra.

Having reviewed the trial court's findings and declarations of law *de novo* and finding them fully supported by the law and the evidence, we affirm the judgment of the trial court.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of DIXON, C., is adopted as the opinion of the Court.

All concur.