**THOMAS INVESTMENT COMPANY, et al. Plaintiff-Respondent,**

v.

**UNITED STATES FIDELITY & GUARANTY, Defendant-Appellant.**

No. 50539.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 29, 1986.

Motion for Rehearing and/or
Transfer to Supreme Court
Denied Sept. 10, 1986.

Application for Transfer Denied
Oct. 14, 1986.

Robbye Hill Toft, St. Louis, for defendant-appellant.

Thomas J. Casey and Frances M. Luerhman, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Judge.

Respondent, Thomas Investment Company [hereinafter Thomas], a wholly owned subsidiary of Hoel-Steffen Construction Company, Inc., whose president, director and principal stockholder was Robert F. Hoel, filed a Petition for Declaratory Judgment in the Circuit Court of the City of St. Louis. Thomas sought a declaration that a commercial policy of insurance issued by appellant, United States Fidelity and Guaranty Company [hereinafter USF&G], covered damage to property owned by Thomas at 4100–4102 Hartford in the City of St. Louis. Although USF&G denied coverage under the policy, the trial court declared that Thomas was entitled to coverage for the loss sustained in December of 1983 when subfreezing temperatures caused the rupture of the plumbing pipes and radiators on the property and water damage resulted. We affirm.

In July of 1982, respondent, a real estate holding company, purchased the two-family flat on Hartford as a business venture. The building was to be gutted, completely renovated and eventually sold as two individual condominium units. The following month, Mr. Hoel contacted Thomas Ricci, an agent with C. J. Thomas Insurance Agency, who was authorized to represent USF&G. It had been respondent's practice for twenty-five years to insure property with USF&G under a "Master Policy"

which permitted the addition or deletion of coverage on property as needed. Mr. Hoel informed Mr. Ricci that he had purchased the building and requested builder's risk coverage on the property during the construction.

By September of 1983, the construction was complete. During the annual review of coverage with Mr. Ricci, Mr. Hoel requested that the builder's risk coverage be deleted on the Hartford property as of October 1, 1983, and that on the same date, the completed condominiums be covered under the standard policy provisions.

Mr. Hoel testified that although he did not specifically tell the agent that no one would be living in the building, he did inform him that the rehabilitation was complete, that he intended to sell the property and that he wished to carry $100,000.00 insurance on it until it was sold. Mr. Ricci stated that he was not certain whether the insured had indicated whether the property was to be sold or rented, but he had assumed, based on his knowledge of past property transactions by the insured, that it would be rented. However, with the exception of one other residential property, respondent owned only commercial property which it leased to businesses.

After an unsuccessful attempt to sell the property, the respondent entered into an agreement to list the condominiums with a realtor on October 27, 1983. Mr. Hoel, who had been holding open house on Saturday and Sunday afternoons, removed his table, chairs, television and radio on that date, but left nine live plants in the condominiums. He instructed the realtors to leave the heat on and the thermostats set at fifty-five degrees.

Mr. Hoel visited the property on December 24, 1983 and discovered that someone had turned the thermostats off. All the water pipes and radiators had ruptured as a consequence of the extremely frigid weather and the loss of heat. Major water damage to the walls, carpeting and floors had resulted.

When notified of the loss, USF&G sent an investigator to inspect the condomin-iums. He concluded that the property had been vacant and unoccupied for a period of more than sixty days at the time of the loss and that, therefore, on the basis of a condition in the Master Insurance Policy, Form MIP–101, the loss was not covered. Form MIP–101, subtitled "Standard Fire Insurance Policy," covered only the perils of fire and lightning. The investigator also denied coverage based upon an attachment to the master policy, Form CF 0013, which provided extended coverage for perils other than fire and lightning.

The pertinent section of this form excludes:

4. leakage or overflow from plumbing, heating, air conditioning, or other equipment or appliances (except fire protective systems) caused by or resulting from freezing while the building is vacant or unoccupied, *unless the named Insured shall have exercised due diligence with respect to maintaining heat in the buildings* or unless such equipment and appliances had been drained and the water supply shut off during such vacancy or unoccupancy.... (emphasis added).

The investigator testified that all coverage written under the master policy was subject to the conditions of Form MIP–101. Mr. Ricci, the agent, testified that in his opinion Form MIP–101 applied only to the perils of fire and lightning and that Form CF 0013 provided extended coverage for other perils including freezing pipes.

The trial court found in part: (1) that the issue was whether Thomas was entitled to coverage under the terms of the policy or whether coverage was excluded by the standard sixty day vacancy provision of Form MIP–101 or the due diligence exclusion of Form CF 0013; (2) that the sixty day vacancy exclusion applied to losses from freezing and was not limited to the peril of fire; (3) that USF&G abandoned its affirmative defense that Thomas failed to exercise due diligence; and (4) that Thomas was covered under the master policy because USF&G waived the sixty day vacancy provision since its agent knew the prop-

erty was not likely to be occupied within the sixty day period when he issued the endorsement adding the condominiums to the standard policy coverage.

USF&G's first point on appeal is that the court erred when it found that USF&G did not cancel the builder's risk coverage on October 1, 1983. It is clear from the record that due to the insurer's error the coverage was not cancelled as requested, but because we agree with the trial court that the loss was not covered under the builder's risk endorsement, there is no need for an extended discussion of this point.

Second, USF&G argues that the standard policy did not cover Thomas's loss because the condominiums were vacant or unoccupied as a matter of law in violation of the sixty day clause. The trial court's order was based on its finding that appellant's agent waived Thomas's compliance with the sixty day provision because the agent knew that the property was not likely to be occupied within that period when he insured the property under the standard policy on October 1, 1983. The trial court did not make a specific finding with respect to whether the building was vacant or unoccupied, and an extended discussion of the law with regard to vacancy or unoccupancy is not necessary to the final determination of this dispute.

Appellant's third contention is that the trial court erred in holding that the insured's compliance with the sixty day provision had been waived. The sixty day vacancy or unoccupancy exclusion in Form MIP–101 is not the applicable provision with respect to this loss; therefore, there is no need to address this issue. "An appellate court opinion should be limited to those questions essential to a proper disposition of the appeal." *Community Title Co. v. Roosevelt Federal Savings & Loan Association,* 670 S.W.2d 895, 899 (Mo.App.1984).

Finally we must consider respondent's contention that there is an alternative basis for the judgment in that the specific due diligence provision of the extended coverage endorsement is in conflict with, and must, therefore, prevail over, the more gen-

eral policy provisions. The trial court held that the general sixty day vacancy or unoccupancy exclusion applied to this loss and that the due diligence provision of the endorsement did not apply. We will consider this contention on appeal because it is clear that the respondent may attack rulings of the trial court in order to sustain a judgment in respondent's favor. *Senter v. Ferguson,* 486 S.W.2d 644 (Mo.App.1972).

After a careful reading of the policy, we find that the trial court erred in holding that the sixty day exclusion applied to losses from freezing. The Master Insurance Form contains general provisions which control in all situations in which a more specific provision does not exist. The list of "[c]onditions suspending or restricting insurance" which contains the sixty day clause is prefaced by the words: "Unless otherwise provided in writing added hereto ...." The specific provision for loss due to freezing excludes coverage only when the damage is caused by the insured's failure to exercise due diligence "while the building is vacant or unoccupied."

It is basic to Missouri law that "all provisions of an insurance policy should be given effect, and a reasonable construction must be given in light of the specific situation with which the parties are dealing." *MFA Mutual Insurance Co. v. Dunlap,* 525 S.W.2d 766, 769 (Mo.App.1975). It is reasonable to conclude that the risk of fire is significantly greater in a vacant building. The risk of freezing, if due diligence is exercised in the maintenance of heat, is not significantly greater in a vacant building. Therefore, the difference in the provisions is reasonably related to the perils involved. *See, Transport Realty Co. v. Commercial Union Insurance Co.,* 404 F.2d 892 (7th Cir.1968); *McLeod & Henry Co. v. Employer's Fire Insurance Co.,* 46 A.D.2d 242, 362 N.Y.S.2d 81 (N.Y.App.Div.1974). It is equally well-settled Missouri law that "[i]f the language of the endorsement and the general provisions of the policy conflict, the endorsement will prevail, and the policy remains in effect as altered by the endorsement." *Abco Tank & Manufacturing Co.*

**398**

v. *Federal Insurance Co.*, 550 S.W.2d 193, 198 (Mo. banc 1977). *See also, Cain v. Robinson Lumber Co.*, 365 Mo. 1238, 295 S.W.2d 388 (banc 1956).

The specific provision in the extended coverage endorsement that deals with the peril of freezing is the applicable provision in light of the facts involved in this case. It suspends coverage only in the event that the insured has failed to exercise due diligence in maintaining heat to the building if the water supply is not shut off. Appellant conceded at trial that the respondent exercised due diligence; therefore, respondent was not in violation of this policy condition.

USF&G contends that the due diligence provision in the endorsement applies only when the vacancy or unoccupancy continues for a period of less than sixty days. This interpretation of the language of the policy must fail because USF&G did not state clearly in the endorsement what they now contend it means. It is the responsibility of the insurer to express its intention with respect to exclusionary clauses clearly. *Citizens Insurance Company v. Kansas City Commercial Cartage, Inc.*, 611 S.W.2d 302, 307 (Mo.App.1980). If the insurer intended the provision to apply only when the vacancy was for less than sixty days or when the insured purchased a separate vacancy rider, USF&G could have written the policy in that manner.

Although the trial court's reasons were incorrect, the policy does provide coverage for this loss. "A finding of fact precedes judgment, and constitutes an opinion for the ground of judgment, but is not a final determination of the rights of the litigants in the subject matter of the action." *Wilhoit v. Wilhoit*, 599 S.W.2d 74, 78 (Mo.App. 1980) (citations omitted). The judgment in a bench-tried case must be affirmed if a correct result is reached, regardless of the reason assigned by the trial court. *Farm Bureau Mutual Insurance Co. v. Broadie*, 558 S.W.2d 751, 753 (Mo.App.1977).

The judgment for the respondent is affirmed.

CRANDALL, P.J., and KELLY, J., concur.