STATE ex rel. STEAK n SHAKE, INC., a corporation, Appellant,

v.

CITY OF RICHMOND HEIGHTS, Missouri, a Municipal Corporation, Richard F. Provaznik, Charles F. Sargent, Nelson Clark and G. V. (Jerry) Flynn, Respondents.

No. 38039.

Missouri Court of Appeals, St. Louis District, Division Four.

Dec. 27, 1977.

Robert C. Jones, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for appellant.

Donald U. Beimdiek, St. Louis, for respondents.

ALDEN A. STOCKARD, Special Judge.

Steak n Shake, Inc. has appealed from the judgment of the Circuit Court of St. Louis County wherein it affirmed the refusal of the City of Richmond Heights to grant "conditional use permits" for appellant to construct and operate an enlarged restaurant facility.

Appellant submitted to the City of Richmond Heights two petitions for a "conditional use permit." Petition 74–7 described land on which there existed a Steak n Shake restaurant operating primarily as a "carry-out" or "curb-service" facility. By the petition permission was sought to construct an enlarged facility. The other, Petition 74–6, described an area to be used for parking space for patrons of the new restaurant.

We do not find a copy of the applicable ordinance in the record. Therefore, we do not know and cannot set out the procedure therein provided for processing a petition

for a conditional use permit. See for example, *State ex rel. Union Electric Co. v. University City*, 449 S.W.2d 894 (Mo.App.1970). Apparently it required the petitions to be submitted to various city departments, including the city Plan and Zoning Commission which recommended "that the City Council approve [the] petitions" contingent on seven enumerated conditions, all of which were expressly accepted and agreed to by appellant. Other departments made recommendations or comments concerning the applications, but none recommended disapproval, and there is no contention that appellant did not agree to any recommended condition.

On May 19, 1975 a public hearing was held before the City Council. At that hearing it was developed that Steak n Shake had an existing facility located on the land described in Petition 74–7 which had a floor area of 915 square feet, and which had eleven "stool-type" seats at a counter. Appellant sought to enlarge and modernize the building to 3,715 square feet and increase the seating capacity to 120 seats. By use of the land described in Petition 74–6 it was proposed to increase the parking facilities to 63 spaces. The overall purpose was to convert the facility to be primarily a "sit-down" restaurant, but to retain at least some curb-service. While the present business was 70% to 75% curb service, it was estimated that in the new facility only about 25% of the business would be curb-service. There was no evidence presented by the City, although questions were asked of appellant's representatives by members of the Council, and there was some comment by a lay person concerning the then existing traffic conditions.

Again we note that we are not advised of the requirements of the applicable ordinance, but at the conclusion of the hearing the mayor announced that "in the matters concerning the granting or the consideration of the granting of the conditional use permits, we are required under the condi-

tions and directions of our zoning ordinance to make certain specific findings."

We set forth verbatim from the minutes of the City Council for November 3, 1975, the questions on which votes were taken, the questions being identical as to each petition, and the vote as to each petition.

(a) Will the proposed use substantially increase traffic hazards or congestion?

No. 74–7    Ayes—3;    Naes—1.
No. 74–6    Ayes—3;    Naes—1.

(b) Will the proposed use substantially increase fire hazards?

No. 74–7    Ayes—0;    Naes—4.
No. 74–6    Ayes—0;    Naes—4.

(c) Will the proposed use adversely affect the character of the neighborhood?

No. 74–7    Ayes—0;    Naes—4.[1]
No. 74–6    Ayes—3;    Naes—1.

(d) Will the proposed use adversely affect the general welfare of the community?

No. 74–7    Ayes—0;    Naes—4.
No. 74–6    Ayes—0;    Naes—4.

(e) Will the proposed use over-tax public utilities?

No. 74–7    Ayes—0;    Naes—4.
No. 74–6    Ayes—0;    Naes—4.

(f) Will the proposed use adversely affect public safety and health?

No. 74–7    Ayes—1;    Naes—3.
No. 74–6    Ayes—0;    Naes—4.

(g) Is the proposed use consistent with good planning practice?

No. 74–7    Ayes—2;    Naes—2.
No. 74–6    Ayes—1;    Naes—3.

(h) Can the proposed use be operated in a manner that is not detrimental to the permitted developments and uses in the District?

No. 74–7    Ayes—4;    Naes—0.
No. 74–6    Ayes—4;    Naes—0.

(i) Can the proposed use be developed and operated in a manner that is visually compatible with the permitted uses in the surrounding area?

No. 74–7    Ayes—3;    Naes—1.
No. 74–6    Ayes—3;    Naes—1.

(j) Is the proposed use deemed essential or desirable to preserve and promote the public health, safety and general welfare of the City of Richmond Heights?

74–7 would adversely affect the character of the neighborhood.

1. In its brief to this court the City of Richmond Heights erroneously states that the City Council concluded that the use proposed by Petition

No. 74–7    Ayes—2;    Naes—2.
No. 74–6    Ayes—1;    Naes—3.

The mayor then announced that as to Petition 74–7 the Council's findings "by a majority voice vote" were affirmative as to (a) and negative as to (g) and (j), thereby denying the granting of the petition, and that as to Petition 74–6 the Council's findings "by a majority voice vote" were affirmative as to (a) and (c) and were negative as to (g) and (j), thereby denying the granting of the petition. We note here that the vote on Petition 74–7 as to questions (g) and (j) was not "by a majority voice vote," but the vote was equally divided.

On December 1, 1975 appellant filed in the Circuit Court of St. Louis County its petition for a judicial review of the decision of the City Council pursuant to Rule 100.07, or in the alternative for a writ of certiorari for review pursuant to Rule 100.08. Appellant argues on this appeal that this is not a "contested case" as defined in Rule 100.01, and that the scope of review is that provided by Rule 100.08(a). No additional evidence was submitted to the trial court, and on March 3, 1976, it entered judgment that "the decision of the City Council denying [appellant's] applications for conditional use permits [is] supported by competent and substantial evidence, and [is] not against the overwhelming weight of the evidence."

This requires a determination on our part of the scope of our review which depends upon whether this case is a "contested case" within the meaning of Rule 100.01(3). The term is there defined as a "proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing; * * *."

When the legislative body of the City chooses, as the City of Richmond Heights has done, to delegate to itself the discretionary power to enforce its regulation of conditional use permits, it acts administratively in passing on applications for such permits. *State ex rel. Manchester Improvement Co. v. City of Manchester*, 400 S.W.2d 47 (Mo.1966); *State ex rel. Union Electric Co. v. University City, supra.*

A hearing was held on the petitions for conditional use permits, and in its brief appellant admits that "a public hearing is required [by the ordinance] to be held prior to the issuance of a conditional use permit." It asserts, however, that this is not a "contested case" because "there is no statutory or ordinance requirement for a record to be kept." We do not agree that this results in this not being a contested case. The case of *In re Village of Lone Jack*, 419 S.W.2d 87, 90 (Mo. banc 1967), involved a situation where the testimony of witnesses at a required hearing before an administrative agency was not preserved and therefore not filed with the reviewing court. It was held: "Parties desiring that their interests be reviewed in accordance with § 536.140 [Rule 100.07] will see to it that the full record necessary for proper review is certified to the initial reviewing court; * * *." The requirement in this case that the conditional use permits be issued only after a hearing resulted in this case being a "contested case," but the duty to cause a record thereof to be made and kept is on the "parties desiring that their interests be reviewed." See also *Sullivan County v. State Tax Commission*, 513 S.W.2d 452 (Mo.1974).

Appellant admits that the conditional use provisions of the ordinance of the City of Richmond Heights contain sufficient standards to guide the City Council in making its determinations, but it contends that the Council acted "arbitrarily, capriciously and discriminatorily in applying the evidence to these standards, and ignored uncontradicted and unimpeached testimony in making their determination to deny the applications." See Rule 100.07(6). It also contends that there was not substantial and competent evidence to support the conclusions reached. See Rule 100.07(3).

We are not informed why two petitions for a conditional use permit were filed. It may have been because the land described in Petition 74–7 was zoned "G–Commercial" and that described in Petition 74–6 was zoned "F–1 Limited Commercial." But in each petition it was made clear that the

purpose and intent was to "utilize the entire tract of land" owned by Steak n Shake as a "total facility" for a restaurant. Also, in the presentation of this case to the City Council appellant made it plain that it proposed to use the two tracts described in the petitions "for a combined use and parking facility." Under no circumstance could the members of the City Council reasonably have believed that Steak n Shake sought approval of either petition without approval of the other. While technical reasons may have required two petitions, they were in fact but one request. It may have been proper, and perhaps necessary, to vote on the ten questions as to each petition but it was inconsistent for the Council to determine that the use proposed by Petition 74–6 would adversely affect the character of the neighborhood, but that the use proposed by Petition 74–7 would not do so.

We also note that by its vote the City Council determined that the use proposed by each petition would not adversely affect the "general welfare of the community" or the "public safety and health." But, by its vote on question (j) it determined that the proposed use in each petition would not be essential or desirable to "preserve and promote the public health, safety and general welfare of the City of Richmond Heights." We consider the votes as to "adversely affect" and to "preserve" to be inconsistent. Appellant does not present the issue, but we know of no authority for a city to impose as a condition for the use of land that it affirmatively "promote" the public health and general welfare in addition to not having an adverse affect.

To recapitulate, the votes adverse to appellant's applications were:

(a) the proposed use would increase traffic hazards or congestion;

(b) the proposed use would not be consistent with good planning practice;

(c) the proposed use would not be essential or desirable to preserve and promote the public health, safety and general welfare of the City of Richmond Heights.

There was evidence that some increase in traffic would probably result from the proposed use, but there was absolutely no evidence that this increase in traffic would "substantially increase traffic hazards or congestion." This standard was not mentioned by any witness. There was no evidence of the existing volume of traffic, or of the capacity of the streets in the immediate neighborhood, or that the anticipated increase in traffic could not be absorbed by effective traffic controls. For example, the report to the Council by the Chief of Police recommended that "a barrier [be] built along the alley right of way with an established intersection between the two lots," and the view was expressed that such barrier "would give a degree of safety for both pedestrians and vehicular traffic." The test established by the ordinance is whether there would be a "substantial increase in traffic hazards or [traffic] congestion;" not whether there would be some increase in the volume of the traffic. The City totally ignores this distinction in its brief. The record is totally devoid of any evidence of the former.

The record also contains no evidence to establish, or from which it could be found, that the proposed use would not be consistent with good planning practice. There is nothing in the record from which it could be determined that the proposed use would violate any acceptable principle of good city planning. In fact, there is nothing in the record to show the characteristic of the immediate neighborhood, or that any plan exists, or in what respects a plan, if one exists, would be violated.

Disregarding the inconsistency between the findings by the Council that the proposed use would not "adversely affect" the general welfare or the public safety and health, but that it would not be essential or desirable to "preserve and promote" the public health, safety and general welfare, there is absolutely no evidence as to how and in what respects it would have the adverse affect referred to in the latter finding. Any such finding necessarily is based solely on speculation and conjecture.

The Council also found that the proposed use of the parking lot would adversely affect the character of the neighborhood but that the proposed use to enlarge the building would not. As previously noted, the record disclosed no intention to devote either parcel to the proposed use independently of the other. Other than a casual reference to a "McDonalds" in the neighborhood, there is no evidence of the character of the neighborhood, or how and in what respects the proposed use would adversely affect that character, whatever it is.

The City argues in its brief that the issue before the Council was a "debatable one," and in support of this contention it sets forth the following seven items of information the Council had available to it for consideration.

    (a) Information presented at the March 19, 1975 meeting of the City Plan and Zoning Commission.

    (b) The March 25, 1975 report of the City Plan and Zoning Commission.

    (c) Reports from the City Department supervisors.

    (d) Petitions from City residents.

    (e) Information presented at the public hearing held on May 19, 1975.

    (f) "Report dated July 15, 1975 from the Christner Partnership—Architects and Planners titled 'Comprehensive Study—Phase I Richmond Heights, Missouri—area bounded by Clayton Road to Highway 40, Innerbelt to Black Creek.'"

    (g) Personal observations of the area.

As to item (a), there is nothing in the record before us as to what "information" was presented at the March 19 meeting, and we do not even know that members of the City Council, or any of them, were present.

As to item (b), the report of the City Plan and Zoning Commission contained the recommendation that the petitions be granted with certain conditions, all of which appellant expressly agreed to.

As to item (c), there is no report in the record from any department supervisor recommending disapproval of the petitions, and we find nothing in any such report which lends support to the adverse votes of the Council.

As to items (d) and (e), the petitions in the record from City residents are all in support of the approval of the petitions, and we find nothing in the record of the hearing held May 19, 1975, which is a part of the record before us, which supports the adverse votes of the Council.

■ There is no such report in the record as that referred to in item (f). It was dated after the hearing on the petitions in this case was closed. If the City Council considered it to have been of any importance to this case, the hearing could have been reopened, the report then received in evidence, and appellant afforded an opportunity to reply to it if it was adverse to appellant's petitions. Having elected not to do so, the City cannot now be heard to say that it was entitled to base its determination in part on that report.

■ In its brief the City admits that members of the Council based their decision, at least in part, on the information presented at the meeting of the Plan and Zoning Commission, the report dated July 15, 1975, and on "personal observations." The City Council was required to determine certain issues after a public hearing. That requirement clearly contemplates that the findings and decisions of the members of the Council are to be based on the evidence presented at that hearing. As stated in 3 American Law of Zoning 2d ed., Anderson, § 20.37, "Where a board decides an issue on the basis of its knowledge, accumulated over the years or gained through an inspection of the premises, serious questions of fairness arise." Also, "Although a board of adjustment [to which the City Council in this case should be comparable] may properly use its own knowledge to reach a decision, the facts which are known to the board members and not otherwise disclosed in the record must be recited in the record." This precise issue was presented in *Niggel v. City of Columbia*, 254 S.C. 19, 173 S.E.2d 136, 139 (1970), and we agree with what was there said:

"The Zoning Ordinance requires that the Board of Adjustment determine issues presented to it after notice and a hearing. Its findings and decisions as to whether a proposed use of property complies with the uses permitted in a particular district must of necessity be reached on the basis of the evidence and record before it. While members of the Board may be presumed to have special knowledge of the area involved and may, under proper circumstances, use such knowledge in deciding a matter, there is no presumption that its special knowledge as to disputed factual issues was used in reaching a decision. As a general rule, before the special or personal knowledge of the members of the Board may be used as a basis for its decision, such fact must be set forth in the record, together with a statement of the facts which are known to the board and not otherwise disclosed in the record. Such disclosure of record has a two-fold purpose—first, to afford the parties an opportunity to test the accuracy or relevance of the board's personal information relative to the disputed issues to be decided and, second, to provide a record for an intelligent review by the court. A lack of evidence at the hearing on disputed factual issues cannot be supplied by a presumption that the board had special information which was not shown in the record."

■ Our review is confined to the evidence presented at the hearing before the City Council and certified to the Circuit Court, which constitutes the record on this appeal. There is nothing in that record to indicate what facts were considered by the board which are not a part of the record. The courts should not presume that members of an administrative agency based their decisions on personal knowledge simply because there is no evidence in the record that they did not do so. In that situation the agency is entitled to the presumption of regularity. *Trovato v. Chiaradio*, 95 R.I. 326, 186 A.2d 736 (1963). But in this case, the City admits in its brief that the members of the Council did base their votes, at least in part, on personal knowl-

edge, on a report never introduced in evidence or seen by appellant, and on other evidence not in the record. In such circumstances this results in the action of the City Council in denying the petitions of appellant being arbitrary, capricious, and an abuse of discretion.

■ Because of the inconsistencies previously mentioned, the total lack of competent evidence to support the rulings adverse to appellant's petitions, and the improper procedure on the part of the members of the City Council, the decision to deny the petitions cannot be permitted to stand.

The judgment of the Circuit Court is reversed and the cause remanded with directions that it remand the proceedings to the City Council of Richmond Heights for further consideration of the petitions.

SIMEONE, C. J., and NORWIN D. HOUSER, Special Judge, concur.