**DAVCO FOOD INCORPORATED,**
Plaintiff-Appellant,

v.

**CITY OF BRIDGETON, et al.,**
Defendant-Respondent.

No. 51058.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 12, 1986.

Gerald T. Hoff, Clayton, for plaintiff-appellant.

Martin P. Zucker, St. Louis, for defendant-respondent.

REINHARD, Judge.

Davco Food, Inc. [Davco] appeals from an order of the circuit court affirming the Bridgeton City Council's denial of its request for a special use permit. We affirm.

Davco is the lessee of a tract of land located on the K–Mart shopping center parking lot at the intersection of Lindbergh Boulevard and Blake Avenue in Bridgeton, Missouri, an area zoned B–2 (community business). Davco proposed to build a Wendy's Restaurant at that location and applied for a special use permit, which is required for "fast food" restaurants in B–2 zones under the Bridgeton Zoning Ordinance.

Special use permits are granted or denied by the City Council of Bridgeton after a public hearing. Section 8.3–3 of the zoning ordinance provides that in considering applications for special use permits:

> ... the City Council shall determine whether such building or use would promote the health, safety, morals or general welfare of the people of the City of Bridgeton in accordance with and in accomplishment of the comprehensive zoning plan of the city, and in making such determinations, the Council shall consider the effect of such building or use on (a) traffic conditions, (b) fire hazards, (c) the character of the neighborhood, (d) the general welfare of the community, (e) public utilities.

Pursuant to the ordinance, Davco's application was first considered by the Bridgeton Planning and Zoning Commission, which made a report to the City Council recommending that the application for a special use permit be approved subject to several conditions:

1. The landscaping along Fee Fee Road be planted per the landscape plans submitted, and this landscape strip along Fee Fee Road be the responsibility of Wendy's restaurant for maintenance and clean-up.

2. The wall along two sides of the building be erected per the plan submitted.

3. The maintenance and clean-up of the Wendy's restaurant facility be the responsibility of the Wendy's restaurant.

4. The closing time for Wendy's restaurant be 11:00 p.m. every night.

The Commission found "no adverse effect from this development on traffic conditions, fire hazards, the character of the neighborhood, the general welfare of the community and public utilities."

On February 6, 1985, a public hearing was held before the Bridgeton City Council to consider Davco's application for a special use permit. A letter from the Planning and Zoning Commission to the Mayor containing the Commission's recommendations on the Davco application was introduced into evidence. Also introduced were letters from the Missouri Highway Department, Southwestern Bell Telephone, the Bridgeton Department of Parks and Recreation, the Bridgeton Police Department and The St. Louis County Water Company. None of those letters contained objections to the application. The letter from the police department specifically stated: "[a]fter having reviewed the ... site plan, I find no reason to believe that the proposal ... will adversely affect traffic or increase criminal activity within our city." In addition, a traffic impact analysis conducted by James Becker, a consulting engineer, was introduced into evidence by Davco.

Tom Hill, an employee of Becker Engineering, testified regarding changes that had been made in response to "objections both from the Planning and Zoning Commission and the people in the neighborhood." He described the landscaping plan, which included masonry walls to help control windblown debris and improve the aesthetic value of the development. He also presented slides showing the design of the Wendy's Restaurant.

Mr. Mohme, Davco's attorney, told the council that "Wendy's would assume the cost of landscaping ... along Fee Fee Road into the residential area." He also informed the Council that the masonry walls should help "screen" headlights from the residents along Fee Fee Road. Mr. Mohme did request that, contrary to the recommendation of the Commission, Wendy's be allowed to remain open until 1:00 a.m. Finally, Mr. Mohme stated:

> The one area which we have—were not able to solve the problem, so to speak, was in the area of traffic.

> Our traffic surveys are there with the document (sic). They show a slight increase in the traffic. The traffic at Lindburgh (sic) and Blake is already heavy and there is not a great deal we could do about that....

The traffic analysis indicated that the Wendy's Restaurant would create a 9% increase in traffic volume on Blake Avenue. It noted that the maximum volume hour for Wendy's would be the noon hour, while overall traffic volume would be greatest during the "weekday p.m. peak hour." Wendy's would increase the p.m. peak hour traffic by 1%.

Finally, the Council heard from several citizens who opposed the application, citing traffic problems, noise, headlight glare, decreased parking space and litter among their concerns. Mrs. Ladeau stated that "the traffic [in the area of the proposed development] is abominable. You cannot get out of your driveway to get anywhere." Mr. Siegl noted that "... we've got a cut-through problem. I'm not directly across from it [the proposed development], but I am right on a corner to where I get an awful lot of cut-through traffic coming off of St. Charles Rock Road to get to Fee Fee Road without going through the stoplights." He also stated that "you can't get in and out of your own driveway."

On April 3, 1985, the Council issued findings of fact and conclusions, and unanimously denied the requested special use permit. All Council members found that the proposed use would have an adverse effect on traffic conditions. Six of the seven members also found an adverse impact on the character of the neighborhood, while four members found an adverse effect on the general welfare of the community.

The requirement that special use permits be issued or denied only after a public hearing makes the Council's action a "con-

tested case" under Chapter 536, RSMo 1978, and Davco filed a petition for administrative review in circuit court. The circuit court found that the Council's denial of Davco's application was supported by competent and substantial evidence upon the record as a whole, and was not arbitrary, capricious, or an abuse of discretion. Davco now appeals that order affirming the action of the Bridgeton City Council.

On appeal Davco alleges that "the Court erred in failing to find that the administrative decision of the City Council in denying a special use permit to plaintiff was unsupported by competent and substantial evidence and therefore was arbitrary and capricious and involved an abuse of discretion."

■■ We note first that a legislative body of a city acts administratively in granting or denying special use permits. *Williams v. City of Kirkwood*, 537 S.W.2d 571, 574 (Mo.App.1976). Our review is limited to a determination of whether the Council's findings were reasonable in light of the evidence or whether the decision reached was contrary to the overwhelming weight of the evidence. We may not substitute our judgment for that of the Council; we review the evidence in the light most favorable to its decision to determine whether such decision is supported by substantial and competent evidence. *State ex rel. C.C.G. Management Corp. v. City of Overland*, 624 S.W.2d 50, 54 (Mo.App. 1981). If the evidence before an administrative body would warrant either of two opposed findings the reviewing court is bound by the administrative determination and it is irrelevant that there is supportive evidence for the contrary finding. *Moore v. Board of Education of the Special School District of St. Louis County*, 547 S.W.2d 188, 191 (Mo.App.1977). Furthermore, the decision of an administrative tribunal carries with it a strong presumption of validity which cannot be overcome by anything short of "clear and convincing evidence." *Technical & Professional Services, Inc. v. Board of Zoning Adjustment of Jackson County*, 558 S.W.2d 798, 803 (Mo.App.1977).

■■ Our examination of the record convinces us that the Council's decision was not arbitrary or capricious, and its finding that the Wendy's Restaurant would have an adverse impact on traffic conditions was supported by competent and substantial evidence. We therefore need not discuss Davco's contentions regarding the Council's additional findings and the competency of the evidence cited to support them.

The main evidence on the issue of traffic conditions was the Becker Engineering report, which concluded that the proposed restaurant would increase traffic volume by 9%. Davco seeks to minimize the importance of that figure by pointing out that "p.m. peak hour" traffic would be increased by 1% and by citing Becker's recommendation that Blake Avenue be restriped to create four lanes and accommodate a greater number of vehicles. However, we do not view the projected 9% increase in volume on this busy street as inconsequential. It is worth mentioning that the Becker Analysis was based on existing traffic flow patterns, and there is no evidence concerning the effect restriping Blake would have on those patterns. If there are persons who presently avoid the avenue because of congestion but would utilize it if restriped, the change would not be the panacea Davco asserts. We believe the Council could reasonably conclude from the evidence that the Wendy's Restaurant would have an adverse impact on traffic conditions. Again we note the deference extended to administrative decisions, and the fact that the Council might reasonably have reached a contrary conclusion is of no moment.

Davco relies heavily on *State ex rel. Steak n Shake v. City of Richmond Heights*, 560 S.W.2d 373 (Mo.App.1977), wherein we held that the Richmond Heights City Council's denial of Steak n Shake's request for a conditional use permit was arbitrary, capricious and an abuse of discretion. In so holding we noted inconsistencies in the council's findings of fact, a "total lack of evidence to support the rulings adverse to appellant's petitions, and ... improper procedure on the part of

members of the City Council ..." *Id.* at 379. As can readily be discerned from the above, *Steak n Shake* is distinguishable from the case at bar. There is no allegation here of improper procedure, nor are there any inconsistencies in the Bridgeton Council's findings. With regard to the impact of the use on traffic conditions, the test set forth in the Richmond Heights ordinance was "whether there would be a *'substantial* increase in traffic hazards or [traffic] congestion'." *Id.* at 377. (Emphasis ours). The Bridgeton ordinance, like the Webster Groves ordinance considered in *State ex rel. Ludlow v. Guffey,* 306 S.W.2d 552 (Mo. banc 1957), requires only that the proposed use have an adverse effect on traffic conditions. While we do not indicate that any effect on traffic conditions is enough to satisfy the Bridgeton ordinance test, the difference in standards is significant. Furthermore, in *Steak n Shake* "... there was no evidence of the existing volume of traffic, or of the capacity of the streets in the neighborhood ..." *Steak n Shake,* 560 S.W.2d at 377. In contrast, here there was evidence regarding the existing volume of traffic and the traffic capacity of Blake Avenue.

As previously discussed, the 9% increase in traffic volume on an already busy street was competent and substantial evidence from which the Bridgeton City Council could reasonably find an adverse effect on traffic conditions. The impact was not so insignificant as to make the Council's decision arbitrary, capricious, or an abuse of discretion.

Judgment affirmed.

DOWD, P.J., and PUDLOWSKI, J., concur.