HENLE, APPELLEE, *v.* CITY OF EUCLID ET AL., APPELLANTS.

(No. 23021—Decided April 7, 1954.)

*Mr. Hubert B. Fuller* and *Mr. Perry L. Graham,* for appellee.
*Mr. Paul H. Torbet,* for appellants.

SKEEL, J. This appeal comes to this court on questions of law and fact from a decree for the plaintiff entered by the Common Pleas Court of Cuyahoga County.

The action is one seeking a declaratory judgment, injunction and equitable relief. The plaintiff is the owner of a vacant lot at the northeast corner of Lakeland Boulevard and Babbitt Road in the city of Euclid. The defendants are the city of Euclid, the mayor of the city of Euclid, the building commissioner of the city of Euclid, and the Attorney General of the state of Ohio.

The petition alleges that Euclid is a city of approximately 50,000 inhabitants, and, in addition to a very large residential area, there are within its boundaries many large industrial plants in areas zoned for industrial use. It is alleged that Lakeland Boulevard (also known as state route No. 2, a main state through highway extending easterly and westerly from Cleveland) is a heavily travelled highway used by trucks, busses and passenger cars, and that much of the commercial traffic is interstate as well as intrastate in character. It is alleged also that Babbitt Road is a main thoroughfare, heavily travelled, with busses, trucks and passenger cars running from Euclid Avenue to Lake Shore Boulevard, much of which traffic is interstate.

The plaintiff says further that the city of Euclid passed a zoning ordinance, effective November 13, 1922, the city then being a village. By the terms of such ordinance, the village (now the city of Euclid) regulated and zoned the entire territory of the village under a comprehensive zoning plan, limiting the uses to which property in the several zones could be devoted, as designated by the zoning map; that since 1922 said ordinance has been amended from time to time, changing the use districts, as shown by the revised zoning maps; that such an amendment was passed December 30, 1950, changing and increasing the classifications as follows: U-1, parks and single-family residences; U-2, two-family residences; U-3, apartments, hotels, hospitals, etc.; U-4, local retail business, including banks, garages, and grocery stores; U-4A, retail gasoline stations; U-4B, undertaking establishments; U-4C, night clubs, hotels, etc.; U-5, commercial; U-6, industrial; U-7, prohibited uses.

It is alleged further that by the provisions of the zoning ordinances the city council has the right either upon its own motion or upon application after public notice and hearing to amend the regulations and districts after referring the proposed change to the city planning and zoning commission (Board of Zoning Appeals) for report; that the planning commission is authorized to recommend amendments provided such amended use in such location will not, in its judgment, substantially and permanently injure the appropriate use of neighboring property, and provided the petitioning applicant files with the application the written consent of 80 per cent of the owners of property within 200 feet of the applicant's property.

The plaintiff alleges that the Sun Oil Company has, by written contract, offered to buy her lot described in the petition for $15,000, provided it could be re-

zoned to permit the erection and operation of a gasoline filling and service station; that the Sun Oil Company made an application to the building commissioner for a permit, which was deferred until the property was reclassified from U-4 to U-4A; that a request was addressed to the city council of Euclid, seeking such reclassification, accompanied with the written consent of more than 80 percent of the property owners within 200 feet of such lot; and that several hearings were had on such application, the application at one time during the investigation being referred to the Board of Zoning Appeals. The Board of Zoning Appeals reported unfavorably on the application because the property would most likely be needed in the construction of the proposed Lakeland Freeway. The city council, subsequent to receiving the report of the zoning board, refused to rezone the property for the same reasons that influenced the Board of Zoning Appeals to file its report against such change.

With minor exceptions, there is no dispute about the foregoing allegations of fact. The plaintiff's petition alleges further that as to her property the zoning ordinance is unconstitutional and confiscatory, and that the action of the city council in refusing to rezone plaintiff's lot from a U-4 to a U-4A use, was arbitrary, unreasonable and constituted an abuse of discretion, and prays for an order holding the zoning ordinance unconstitutional as to plaintiff's property, and seeks a mandatory injunction requiring the necessary permits to build a filling station on her property at Babbitt Road and Lakeland Boulevard in such city.

The answer of the defendants admits the zoning ordinance as pleaded by the plaintiff and that there is no property now zoned in the city for U-4A use, except one parcel at the corner of Euclid Avenue and Richmond Road; admits that an application was made

to rezone plaintiff's lot for filling station purposes; denies that plaintiff made the application or that it was made as claimed by plaintiff's petition; and admits that a public hearing was had before the board of zoning appeals and the city council, but not as alleged by plaintiff. The answer denies that plaintiff's property is valueless under the U-4 zoning restriction and alleges that a filling station would adversely affect the residential property in the territory to the north and the safety of the school and playground across the street to the west. It is alleged also that the city is well supplied with filling stations, that there is no necessity for constructing new ones, and that the plaintiff did not prove to the city council or the Zoning Board of Appeals that an additional filling station was necessary to promote the public convenience. The answer alleges further that there is to be constructed through the city of Euclid the Lakeland Freeway, the center line of which has been fixed by council, thereby determining the land needed in its construction; that plaintiff's property is within the right of way and needed for that purpose; that no building can or will be permitted to be constructed which will be detrimental to the freeway; and that administrative steps have been taken to appropriate the necessary property for such freeway. But there is no allegation that negotiations or legal proceedings are immediately contemplated or pending, seeking to subject the plaintiff's property to public use. The defendants pray that plaintiff's petition be dismissed.

All affirmative allegations in the answer inconsistent with the plaintiff's petition are denied by plaintiff's reply.

The plaintiff's action is for a declaratory judgment seeking to have the restrictions of the zoning ordinance of Euclid declared unconstitutional as confisca-

tory and unreasonable in preventing her from using her property, described in the petition, for filling station purposes and seeking a mandatory injunction compelling a permit and directing that a permit be issued for that purpose. This court held, in the case of *Criterion Service, Inc.,* v. *City of East Cleveland,* 55 Ohio Law Abs., 90, 88 N. E. (2d), 300, that a property owner is a proper party plaintiff in seeking injunctive relief against an ordinance affecting his property which he claims to be unconstitutional, without complying with administrative procedure provided for by such ordinance. It is also the right of plaintiff under the declaratory judgment act to prosecute this action. (Section 2721.03, Revised Code.) Nor is the fact that the application for a permit to build a filling station was filed by the Sun Oil Company instead of plaintiff, detrimental to plaintiff's case. It is enough that an application was made for a permit to use this property for a filling station, by one having a contingent interest in using the property for that purpose, that the city council was petitioned for relief from the zoning classification, that the Board of Zoning Appeals did act on such application at the request of the city council, and that the consent of more than 80 per cent of the property owners within 200 feet of the property was obtained, each of the procedural steps having been taken at the direction of the officials of the city, so that if there were any defects in administrative procedure, it should not be permitted to prejudice plaintiff's rights under the admitted circumstances of this case.

The issue that gasoline stations are not needed in Euclid seems to have been abandoned in the briefs. Zoning ordinances cannot be concerned with the question of the economic rules of supply and demand. Such an issue has no place in this kind of an action. Zoning

ordinances are not the media through which restrictions may be placed on who may engage in legitimate enterprise.

The claim that the city has the right to "freeze" plaintiff's property, preventing her from its beneficial use until the city gets around to appropriating it for public purposes as a part of the Lakeland Freeway, is without foundation. If the city needs the property in that development, then an immediate proceeding in eminent domain would end this lawsuit. All that has been done so far toward building the Lakeland Freeway is tentative in character. The proceeding looking to the construction of the freeway has not reached a stage compelling the city to appropriate the property, nor is the plaintiff compelled to stand by, paying taxes without benefit, until the development reaches a stage, if it ever does, where her property must be taken for freeway purposes. Section 713.14, Revised Code.

We are, therefore, confronted with just one question—under all the circumstances and facts of this case, is the zoning ordinance of the city of Euclid, as it applies to plaintiff's property, a constitutional exercise of the police power of the city of Euclid.

As a community grows, population shifts, neighborhoods change and the considerations which once were conclusive as to the right to restrict property to a particular use under a zoning plan, may, by the passing of time, be totally destructive of the owner's rights in the property. This rule was recognized in the case of *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S., 365, 71 L. Ed., 303, 47 S. Ct., 114, 54 A. L. R., 1016, where the Supreme Court of the United States said:

"It is true that when, if ever, the provisions set forth in the ordinance in tedious and minute detail, come to be concretely applied to particular premises, including those of the appellee, or to particular conditions, or to

be considered in connection with specific complaints, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable.''

We, therefore, turn to the record to study the conditions surrounding plaintiff's property. This property is now zoned, without any other property being included, as a U-4 district. The surrounding properties are in a different zone classification. The uses under this classification (U-4) include many kinds of retail business; garages for storage and sale of motor vehicles and repairs, except on bodies and frames; job printing, newspapers, moving pictures theatres, dance halls and the like. The property to the north, on the east side of Babbitt Road, is now in the U-2 district, providing for two-family houses. Most of the houses that have been recently built in that zone are small single-family residences, beginning about 300 feet or more north of plaintiff's property. The first property just north of plaintiff's property is now occupied by a church. The trustees of the church signed the petition consenting to the rezoning of plaintiff's property, circularized by the Sun Oil Company, which petition was filed with the city council on December 15, 1950. North of the church is an old private single residence in the rear of which a public garage business is conducted and maintained. On the west side of Babbitt Road is a large elementary school with a frontage on Babbitt Road of about 1,000 feet running north from Lakeland Boulevard. The Board of Education also signed the petition circulated by the Sun Oil Company, thereby consenting to the rezoning of plaintiff's lot for use as a gasoline filling and service station. To the east of plaintiff's lot, on the north side of Lakeland Boulevard, the property for three short blocks to Johnson Avenue, for a depth of 150 feet, is zoned in the U-5 district, which classification includes garages

for general repair of motor vehicles, including painting; wholesale hardware; warehouses for storage in bulk in the open of building materials, contractor's equipment, lumber, ice, wood, coal, or household foods; canning, packing or bottling of products; lumber processing; meats, fowl, fruits or vegetable curing; metal processing; tin shops, plumbing supply shops; freight stations; wholesale produce markets; wholesale produce sales rooms; laundry, carpet cleaning, dry-cleaning, dyeing, and many other uses. This is the classification in which filling stations were placed before the amendment.

There are now four or five very old residences on this side of Lakeland Boulevard between Babbitt Road and Johnson Road, a garage business being operated behind the one nearest plaintiff's property, and one farther east. There are also one or two properties now devoted to commercial purposes within this district. At the southeast corner, directly across Lakeland Boulevard from plaintiff's property, is a Standard Oil service station and a bulk gasoline plant, which property together with that to the east to a point opposite Johnson Road is zoned as a U-5 district, the uses in such district being as above described. The southwest corner of Lakeland Boulevard and Babbitt Road is now occupied by a Texaco gasoline service and filling station, the property from the corner west extending back to the New York Central Railroad tracks for about 200 feet, being a U-5 district. To the rear of the Standard Oil and Texaco service stations (measured along Babbitt Road about 200 feet to the south of Lakeland Boulevard) is the New York Central Railroad main tracks and with the exception of the two U-5 districts above described, all the property for a considerable distance east and west of Babbitt Road from Lakeland Boulevard south is a great expanse of

acreage going south beyond the Nickle Plate Railroad, and it is all zoned for industrial use (U-6), where now is located the Taylor and Boggis Foundry, the Chase Brass & Copper, Inc., Addressograph-Multigraph Company, and many other large industrial institutions employing thousands of people. That is to say, that within 250 feet of plaintiff's property is one of the great industrial and manufacturing centers of Greater Cleveland with two of the four corners of the intersection now being used for gasoline station purposes and one of such stations being operated in connection with a bulk plant with an overhead storage tank having a capacity of 75,000 gallons of gasoline.

The defendant stresses the traffic problem as a contributing factor in considering plaintiff's application to rezone the plaintiff's property to U-4A use. Undoubtedly, motor vehicle traffic is very heavy at this intersection, particularly during the hours when work shifts are changing in the industrial plants. The total traffic count showed approximately 15,000 vehicles passing the intersection from 7 a. m. to 11 p. m. daily, but it is also important to note that the tally sheets show there is practically no pedestrian traffic. This points strongly to the conclusion that no retail business could be successfully operated without off-street parking, except one of the character of a filling station. It is significant that with the exception of four or five very old residences, probably built before the zoning ordinance was passed, there has been no building on Lakeland Boulevard in this neighborhood, while to the north in the U-2 district above described, out of the noise and inconvenience of traffic congestion and industrial activities, more than 900 single houses have been constructed, which are now occupied.

We find no support in the record that a gasoline station will become a safety hazard in the neighbor-

hood. If two gasoline stations are all right on the south side of the street, it might even be better to have one on the north side to prevent the necessity of westbound traffic crossing over in the face of eastbound traffic for filling station services.

Upon a consideration of every factor advanced by all the parties, the consents freely given by all the surrounding property owners, except the competitors across the street, which is understandable, the fact that no one spoke a word in opposition to the change at the public hearings before council, except the mayor and law director, basing the negative of the issue for the most part on the cost to the city if at a subsequent time the property might be needed for freeway development, the fact that there are already two gasoline service and filling stations at the intersection, the fact that only one piece of property is or could be involved in this classification district, and the fact that the character of the surrounding property uses makes any other use highly improbable and practically impossible, leads to but one conclusion, and that is that to deny plaintiff's application for change of zoning classification from U-4 to U-4A, constituted an abuse of discretion and if persisted in would result in making the zoning ordinance as to plaintiff's property unreasonable and confiscatory and, therefore, unconstitutional.

A decree will, therefore, be entered for plaintiff as prayed for.

*Judgment accordingly.*

HURD, P. J., and KOVACHY, J., concur.