**TECHNICAL & PROFESSIONAL SERVICES, INC., a Missouri Corporation, Petitioner-Appellant,**

v.

**The BOARD OF ZONING ADJUSTMENT OF JACKSON COUNTY, Missouri, Cleo H. Muller, Richard S. Doherty, Allan S. Kaufman, James D. Lewis, Lawrence L. Downs, Robert E. Hertzog, D.V.M., and Merle K. Glover, Respondents,**

and

**Dr. John Williams, C. M. Zerr and Mrs. C. M. Zerr, George T. Ward and Jeanette Ward, John F. Eidson and Delores Eidson, Intervenors-Respondents.**

**No. KCD 28918.**

Missouri Court of Appeals, Kansas City District.

Oct. 31, 1977.

William L. Turner, Edward T. Bullard, Michael J. Gallagher, Gage & Tucker, Kansas City, for petitioner-appellant.

Michael F. Dandino, Asst. County Counselor, Kansas City, for respondents.

George A. Tyree, Robert K. McDonald, Cochran, Tyree, Oswald, Miller & Barton, Blue Springs, for intervenors-respondents.

Before SOMERVILLE, P. J., and WASSERSTROM and TURNAGE, JJ.

SOMERVILLE, Presiding Judge.

Technical & Professional Services, Inc., a Missouri Corporation (Professional Services), obtained recommendatory approval from the Jackson County Planning Commission (Commission) to establish a cemetery, including a chapel and full-service mortuary, on land owned by it in an unincorporated area of Jackson County, Missouri, in the vicinity of Grain Valley/Blue Springs. Professional Services did not fare so well, however, before the Board of Zoning Adjustment of Jackson County, Missouri (Board). Following a hearing this latter body, vested as it was with authority to issue or deny special use permits after receipt of a report and recommendation from the Commission,[1] declined to issue the special use permit requested by Professional Services. Professional Services, pursuant to Sec. 8.31, Ordinance # 23, February 5, 1973, Jackson County Legislature,[2] appealed the adverse

1. Sec. 8.30 Ordinance # 23, February 5, 1973, Jackson County Legislature.

2. "*8.31 APPEALS TO CIRCUIT COURT*—Any person aggrieved by any decision of the County Board of Zoning Adjustment may present to the Circuit Court of Jackson County, Missouri, a petition in the manner and form provided by Section 536.110 RSMO., 1969."

order of the Board to the Circuit Court of Jackson County. Dr. John Williams and others (Intervenors), who appeared in opposition to Professional Services' request for a special use permit at the hearings held by both the Commission and the Board, were permitted to intervene. The Circuit Court of Jackson County also rebuffed Professional Services' efforts to obtain a special use permit by affirming the Board's order.

Upon appeal Professional Services implores this Court to reverse the order of the Circuit Court of Jackson County. It advances three grounds as justification for doing so: (1) in denying Professional Services' request for a special use permit the Board "exceeded" its "statutory authority and jurisdiction" because its decision rested upon "a finding of a lack of need for additional cemetery space and with and for the purpose of regulating business and restricting competition in the community"; (2) the Board's denial of Professional Services' request for a special use permit "was arbitrary, capricious, unreasonable and constituted an abuse of discretion as evidenced by", (a) the Board's refusal to permit Professional Services to present certain "competent and material evidence" at the hearings held by the Board, (b) the Board's refusal to consider certain "competent and material evidence" presented at the hearings held by the Board, (c) the Board's "refusal to review or consider the recommendations of and the transcript of the proceedings before the [Commission]" and its failure "to consider or discuss any of the evidence and testimony presented at the Board hearings prior to rendering [its] decision", and (d) "bias, resentment and hostility expressed toward [Professional Services] at the Board hearings"; and (3) the Board's order is unsupported by competent and substantial evidence on the whole record and is contrary to the overwhelming weight of the evidence.

Regarding Professional Services first ground, it is fundamental that the scope of judicial review of the Board's order encompasses a determination of whether it was lawful, with the question of "lawfulness" turning on whether statutory authority to issue it existed. Art. V, Section 22, Constitution of Missouri. Complete unanimity exists among the parties that Section 16 of the Zoning Order of Jackson County, Missouri, delineates the scope and breadth of the Board's authority apposite granting or refusing special use permits. So far as here pertinent, Section 16, supra, authorizes the Board to grant special use permits for certain enumerated usages, including "cemeteries, mausoleums, and crematories", in any zoning district *"provided that in their [the Board's] judgment such use will not seriously injure the appropriate use of neighboring property, and will conform to the general intent and purpose of this Order . . . ."* (Emphasis added.) The general intent and purpose of the Order, found in its preamble, is expressed as follows: "promotion of health, safety, morals, comfort, or the general welfare of the unincorporated portion of the county, *to conserve property and building values, to secure the most economical use of land and* facilitate the adequate provisions of public improvements, all in accordance with a comprehensive plan . . . ." (Emphasis added.) At this point, however, the parties part ways by reason of a certain finding of fact contained in the Board's order, to-wit, lack of a "definite need of a cemetery in the area", and an improvident statement by a member of the Board during the early stages of the hearing in response to a remark by Professional Services' counsel that there was or would be a demand for more cemetery space in the area, to-wit, "Either that, or they [Professional Services] would provide a better or more attractive service, and they would compete with others, and they [existing cemeteries] would end up with empty cemeteries that don't get filled up." Professional Services decries the particular finding of fact just iterated as a thinly disguised effort by the Board to regulate the cemetery business and to restrict competition. The Board and the Interven-

ers, on the other hand, vigorously reject Professional Services' position as warped and assert that a lack of "need" for a cemetery, as found by the Board, is commensurate with the Board's ultimate finding that issuance of the special use permit "is not reasonable and proper and [would] seriously injure the appropriate use of neighboring property, and [would] not conform to nor be within the scope, intent and purpose of the Zoning Order of Jackson County, Missouri."

Although the courts of this state have never addressed this particular issue in the context asserted by Professional Services, the weight of authority in other jurisdictions is that administrative tribunals vested with power and authority to implement zoning laws may not use such power and authority as a ruse to regulate business and restrict competition. See, for example: *City of Miami v. Woolin*, 387 F.2d 893 (5th Cir. 1968); *Circle Lounge & Grille v. Board of Appeal of Boston*, 324 Mass. 427, 86 N.E.2d 920 (1949); *Henle v. City of Euclid*, 97 Ohio App. 258, 125 N.E.2d 355 (1954); *Blumenreich Properties, Inc. v. Waters*, 14 Misc.2d 947, 178 N.Y.S.2d 905 (1957); *Sun Oil Co. v. Board of Zoning Appeals*, 9 Ohio Misc. 101, 223 N.E.2d 384 (1966), and *State ex rel. Killeen Realty Co. v. City of East Cleveland*, 108 Ohio App. 99, 153 N.E.2d 177 (1958). See generally Anderson, American Law of Zoning § 7.28 at 603. Notwithstanding the aforementioned, the issue at hand does not fit the dispositional pattern urged by Professional Services as lack of "need" for a cemetery is commensurate with and cognate to the Board's ultimate finding that issuance of the special use permit would result in serious injury to the "appropriate use of neighboring property" and would not conform with the general intent and purpose of the Zoning Order of Jackson County, Missouri. Mere speculation that the Board was motivated by policy considerations outside the scope of its authority will not be lightly indulged. Although the Board's choice of language might have been improved upon and the improvident remarks of one of the board members have been better left unsaid, this court nevertheless concludes that the Board's finding of a lack "of need" for a cemetery in the area was consistent with and in aid of its ultimate finding that use of the area for cemetery purposes would seriously injure the appropriate use of the neighboring property and would not conform with the general intent and purpose of the Zoning Order of Jackson County, Missouri. Perforce, all findings were commensurate findings under Section 16 of the Zoning Order of Jackson County, Missouri.

The record is replete with ample evidence to support the findings of the Board. Suffice it to say, no dearth of cemetery facilities existed in the general area. Although zoned for agricultural purposes, evidence introduced by the Intervenors substantiates that (1) the area in question was in the early throes of being converted into a residential area, (2) burial facilities are "negative words" to residential buyers, and (3) the presence of a cemetery would stifle development of adjoining property for residential purposes and concomitantly depress its value. The Board's consideration of "need" for a cemetery does not inexorably connote a regulation of business and restriction of competition as vied by Professional Services. As pointed out in *Plaas v. Lehr*, 538 S.W.2d 919, 921 (Mo.App.1976), and here deemed both appropriate and analogous, "[i]mplicit in this whole concept of comprehensive zoning is the principle that one seeking a change or a rezoning for the use of land must bear the burden of presenting competent and substantial evidence of a public as well as a private need therefor . . . [g]eneral welfare considerations cannot be disregarded." As stated in *Flora Realty & Investment Co. v. City of Ladue*, 362 Mo. 1025, 246 S.W.2d 771, 778 (1952) a determination of "appropriate use" of neighboring property necessarily includes consideration of "all the conditions, physical, economic and social, prevailing within the municipality and its

needs, present and reasonably prospective . . . .". Under all the evidence the most enlightened view of this case is that the Board weighed the "need" for a cemetery against serious injury to the "appropriate use of neighboring property" and the "general intent and purpose" of the Zoning Order of Jackson County, particularly conservation of "property and building values", and concluded that the scales tipped heavily in favor of the latter. Tangentially, a sound decisional basis for Professional Services' first ground for relief is, in a sense, adroitly summarized in *Van Sicklen v. Browne*, 15 Cal.App.3d 122, 127–28, 92 Cal. Rptr. 786, 789–90 (1971): "Although cities may not use zoning powers to regulate economic competition . . . it is also recognized that land use and planning decisions cannot be made in any community without some impact on the economy of the community . . . we hold that so long as the primary purpose of the zoning ordinance is not to regulate economic competition, but to subserve a valid objective pursuant to a city's police powers, such ordinance is not invalid even though it might have an indirect impact on economic competition." For reasons stated, Professional Services is not entitled to any relief under ground one.

■ The four separate facets of Professional Services' second ground will be discussed seriatim. First, Professional Services urges that the Board erroneously refused to hear certain "competent and material evidence" which it sought to introduce at the hearing held by the Board. In order to put this matter in proper perspective, it is necessary to point out that the Board, at the insistence of Professional Services, conducted a bifurcated hearing. At the conclusion of the initial hearing, the Board, at the insistence of Professional Services, adjourned the hearing until a later date to give Professional Services an opportunity to rebut certain testimony previously offered by Intervenors regarding a lack of "need" for a cemetery in the general area and the

depressant effect a cemetery would have on neighboring properties if a special use permit to establish one was granted. When the hearing before the Board was reconvened, Professional Services called and questioned one expert witness who countered and attempted to nullify Intervenors' evidence regarding the depressant effect a cemetery would have on neighboring property values and several witnesses who advanced the "need" for a cemetery in the general area. The witness called by Professional Services regarding the effect of a cemetery on neighboring property values testified in depth and at length. At the conclusion of his testimony, Professional Services sought to call two additional witnesses whose testimony would pertain to the same subject matter. The Board refused to entertain any further evidence on the subject matter and its refusal accounts for Professional Services' present complaint. Parenthetically, the Board also refused to permit Professional Services to introduce certain exhibits in the nature of summarizations of the proffered testimony of the two witnesses just mentioned. The Board's refusal to permit the introduction of these exhibits forms the substance for the second facet of Professional Services' second ground. As to the matter presently under consideration, Professional Services, the Board and the Intervenors all attempt to analyze it in terms of whether Professional Services was denied the right to a public hearing. Each has been remiss in citing any cases which directly support its respective analysis. This court concludes that the matter best lends itself to being analyzed in terms of whether the Board is vested with discretionary power to limit the number of witnesses it will hear on a particular issue. By way of analogy, an abundance of cases exist in this state recognizing that trial courts are vested with considerable latitude in limiting the number of witnesses permitted to testify as to any given issue. In *Markham v. Herrick*, 82 Mo.App. 327, 330 (1900), which is representative of such cases, the court stated: "[A] trial court has

a discretion to limit the number of witnesses on a particular point, and unless an abuse of that discretion appears the appellate courts will not interfere . . . in cases of expert testimony, or . . . when the introduction of a great number of witnesses tends mischievously and unnecessarily to protract the trial, the court may interfere and stop examinations which are merely cumulative in their nature . . . ." Although this court's research has failed to reveal any cases recognizing an administrative tribunal to be possessed with discretion to limit the number of witnesses on a particular issue, the same rationale which recognizes its existence in trial courts seems equally applicable to administrative tribunals. In retrospect, it does not appear that the Board abused its discretion by refusing to permit the two witnesses to testify, particularly so as their testimony was merely cumulative in nature.

Professional Services, by way of the second facet of its second ground, complains that the Board refused to consider certain exhibits summarizing the testimony of the two witnesses who were not permitted to testify in person. The tenor of Professional Services' brief in this respect is that the exhibits were properly received in evidence but the Board disregarded them for purposes of decisional consideration. It is patent that this facet of Professional Services' second ground rests upon a false premise. Having never been received or admitted into evidence by the Board the exhibits were not available for consideration when the Board reached the decisional stage of the hearing.

■ The third facet of Professional Services' second ground attacks the Board's purported refusal to review, consider and discuss all the evidence before it at the decisional stage. Extensive written findings of fact and conclusions of law contained in the Board's order rejecting Professional Services' request for a special use permit bespeak of a thorough and far-reaching consideration of all the evidence before the

Board. Moreover, the solemn decision of an administrative tribunal carries with it a strong presumption of validity which cannot be overcome by anything short of "clear and convincing evidence". *Moore v. Bd. of Ed. of Sp. Sch. Dist., etc.*, 547 S.W.2d 188, 191–92 (Mo.App.1977), and *Aubuchon v. Gasconade Cty. R–1 Sch. Dist.*, 541 S.W.2d 322, 326 (Mo.App.1976). Professional Services has failed to marshal "clear and convincing evidence" to overcome the presumption of validity encasing the Board's order.

■ The final facet of the second ground asserts that bias, resentment and hostility expressed toward Professional Services by the Board engendered the Board's adverse order. Although certain members of the Board addressed pointed inquiries to certain witnesses called by Professional Services, such are not per se indicative of bias and prejudice on the Board's part toward Professional Services, nor can it be said that such inquiries, when considered in conjunction with all the evidence before the Board, manifested bias and prejudice by reason of the Board's adverse order. Those timeworn salvoes of proven unreliability, speculation, conjecture, and surmise, lobbed by Professional Services in support of the final facet to its second ground have, traditionally, fallen short of their mark.

Singularly and collectively, the multiple facets of Professional Services' second ground fail to afford any appellate relief.

■ Professional Services' final ground, that the Board's order is unsupported by competent and substantial evidence on the whole record and contrary to the overwhelming weight of the evidence, lends itself to virtually summary disposition at this point in view of the reasons and correlative evidence heretofore set forth when disposing of Professional Services' first ground. It is axiomatic that an order and decision of an administrative tribunal unsupported by competent and substantial evidence cannot stand. Mo.Const. Art. V, Sec. 22, and *Plaas v. Lehr*, supra. It is also axiomatic that

appellate courts, when engaged in reviewing administrative decisions, have no right or authority to substitute their judgment for that of the administrative tribunal. So long as the order of an administrative tribunal is supported by competent and substantial evidence and does not exceed the tribunal's perimeters of authority, it is entitled to nothing less than affirmance on appeal however impalatable it may be to certain parties by reason of their particular interests or beliefs. Evidence of the opposing parties on all major issues in this case stands in stark contrast. In reality, Professional Services' argument in support of its final ground is cast in terms of attaching greater believability to its evidence as opposed to that of its opponents (Intervenors). This argument ignores judicial commitment to the rule of deference as to findings involving the credibility of witnesses appearing before administrative tribunals. *McCallister v. Priest*, 422 S.W.2d 650, 658 (Mo. banc 1968).

Professional Services' principal complaint as to the competency and substantiality of the evidence to support the adverse order pertains to the Board's ultimate finding that issuance of a special use permit for the establishment of a cemetery would seriously injure the appropriate use of neighboring property. The caliber of evidence sufficient to support an ultimate finding such as this has been infrequently considered at the appellate level. Particularly germane therefore is the case of *Hendels Investors v. Zoning Bd. of Town of Westerly*, 100 R.I. 264, 214 A.2d 200, 202 (1965), wherein the court held: "The board's conclusion 'that the granting of this Special Exception would substantially or permanently injure neighboring residential property' finds support in the testimony of a real estate expert that a 'gas station in this area will certainly depreciate the value of the [neighboring] properties' and reduce the value of adjoining land." In the instant case there is an abundance of opinion testimony from real estate experts that a cemetery in the area would depress the value of the surrounding property. Professional Services' third and final ground is equally lacking in merit.

Judgment affirmed.

All concur.