The **GREATER GARDEN AVENUE AREA ASSOCIATION, et al.,**
Plaintiffs-Appellants,

v.

**CITY OF WEBSTER GROVES, et al.,**
Defendants-Respondents,

**Webster College,**
Intervenor-Defendant-Respondent.

No. 46109.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 12, 1983.

Shulamith Simon, St. Louis, for plaintiffs-appellants.

Allen S. Boston, St. Louis, Albert A. Michenfelder, Jr., Clayton, for defendants-respondents.

GAERTNER, Judge.

This is a proceeding for judicial review, pursuant to Rule 100, arising from the approval by the Webster Groves City Council of an application by Webster College for a special use permit to construct a Fine Arts Center, Studio Theatre, an addition to an

existing building for a restaurant, and a parking lot. Following the action of the City Council, the matter was presented to the trial court for judicial review under Chapter 536, RSMo 1978. The trial court affirmed the decision of the Webster Groves City Council approving the special use permit for Webster College. Appellants appeal here from this order.

In 1963 the Webster Groves City Council granted Webster College a special use permit for the construction of the Loretto Hilton Theatre, a classroom building and two art studios. As the reputation of the Fine Arts Department of Webster College has gained national recognition, enrollment has increased creating a demand for additional facilities. Consequently, Webster College applied to the City Plan Commission of Webster Groves for an amended special use permit and an additional special use permit for the purposes of constructing a Fine Arts Center, Studio Theatre, an addition to an existing building for a restaurant, and a parking lot. Pursuant to the Zoning Ordinance of Webster Groves, Webster College filed with the City Plan Commission its application for a special use permit, a site plan, and necessary descriptive material relating to the intensity and extent of use. The City Plan Commission is an advisory body to the City Council of Webster Groves. The Commission is required to investigate the effect upon traffic or fire hazards, upon the character of the neighborhood and the general welfare of the community. The Commission hears all applications for special use permits made in accordance with the Zoning Ordinance of Webster Groves and forwards these applications together with its recommendations to the City Council. The City Plan Commission conducted two public hearings concerning Webster College's application on February 9 and April 13, 1981. Participants at these public hearings were Webster College officials in support of the proposed special use permit, the Greater Garden Avenue Area Association in opposition to the special use permit, and individual citizens pro and con. The City Plan Commission on April 17, 1981, voted unanimously to recommend City Council approval of the Webster College application for a special use permit subject to six conditions.

Upon receipt of the City Plan Commission report and recommendation, the Webster Groves Zoning Ordinance requires the City Council to hold a public hearing in relation to the matter. After the public hearing, the City Council must determine whether such building or use will:

a. Substantially increase traffic hazards or congestion;

b. Substantially increase fire hazards;

c. Adversely affect the character of the neighborhood;

d. Adversely affect the general welfare of the community;

e. Overtax public utilities.

If the City Council's finding is negative as to all of the subjects referred to in a, b, c, d, and e above, then the application for the special use permit shall be granted.

The Webster Groves City Council conducted the required public hearing on May 5, 1981. The public hearing, which lasted over 4½ hours, began with a formal presentation by representatives of Webster College who explained their plan in detail. Speaking on behalf of Webster College was Dr. Leigh Gerdine, the President of Webster College; Albert Michenfelder, Jr., an attorney representing Webster College; Peter Sargent, the Chairman of the Theatre Arts Department of Webster College; and Gordon Forsyth, a member of the Board of Trustees of Webster College and Chairman of its Facilities and Property Committee. Speaking in opposition to the Webster College proposal included Miss Shulamith Simon, an attorney representing the Greater Garden Avenue Area Association (appellants here); John Hottle, a real estate appraiser; John Bailey, a resident of the City of Webster Groves and a qualified engineer; and Dick Leary, a member of the Greater Garden Avenue Area Association and a resident of Garden Avenue. Following the formal presentations the City Council questioned the various parties concerning the Webster Groves application. After the

questioning by the City Council, the hearing was opened for public comment. Numerous citizens of Webster Groves presented their views both in favor and in opposition to the Webster College proposal. The City Council did not adjourn the public hearing until all persons who wished to make their views known had an opportunity to speak—long past midnight. The minutes of this public hearing run 47 single-spaced pages.

At a meeting on May 14, 1981, the City Council discussed the application. Some council members had questions regarding certain details of the proposal. It was decided to hold an executive session at the next Council meeting for the purpose of addressing these questions to Webster College officials. This executive session was open to the public and opponents of the application were given notice thereof. However, they were advised there would be no further public participation at the meeting. This session was held on May 19, 1981. No new facts or details of the proposal were raised, although a cross-sectional diagram was presented to the Council which reflected a line of sight view of the proposal previously submitted in flat surface form. This "post-hearing" consisted of questions by Council members and responses of college officials regarding matters disputed at the public hearing.

On June 16, 1981, the City Council read its proposed findings of fact and conclusions of law and asked for public comments. Again numerous residents of Webster Groves expressed their opposition to the Webster College proposal. After all the public comments were heard, the City Council voted unanimously to adopt the findings of fact and conclusions of law and then granted Webster College its application for a special use permit.

Appellants' first point on appeal is that the trial court erred in affirming the decision of the Webster Groves City Council because the decision was based on material and evidence received after the public hearing held by the City Council on May 5, 1981, and the Council thereby exceeded its authority and jurisdiction. In particular, they

complain that they were not permitted to speak at the "post-hearing" on May 19, 1981 and of the presentation of the cross-sectional view at that meeting.

Appellants rely on *State ex rel. Steak n Shake, Inc. v. City of Richmond Heights,* 560 S.W.2d 373 (Mo.App.1977), for the proposition that an administrative agency is not permitted to engage in post-public hearing sessions which preclude participation by interested parties. Appellants' reliance on *Steak n Shake,* however, is misplaced. In *Steak n Shake* the City of Richmond Heights refused to grant a conditional use permit for appellant to construct and operate an enlarged restaurant facility. The zoning ordinance of the City of Richmond Heights required a public hearing to be held prior to the issuance of a conditional use permit. The ordinance also contained sufficient standards to guide the City Council in making its determination—standards which are similar to those laid out in the Webster Groves Zoning Ordinance. In its brief on appeal, the City of Richmond Heights admitted that members of the City Council based their votes denying Steak n Shake a conditional use permit, at least in part, on personal knowledge not set forth in the record and other evidence not in the record including a report which was dated after the public hearing, and which was not a part of the legal file on appeal. Since the City admitted that it did not make its determination solely on evidence presented at the public hearing, this court found the procedure improper and the action of the City Council in denying the petitions of appellant to be arbitrary, capricious and an abuse of discretion.

Here, the Webster Groves City Council expressly stated that its findings of fact and conclusions of law were based upon "the evidence presented at the public hearing and the exhibits submitted at such hearing."

Contrary to appellants' assertion, *Steak n Shake* does not speak to the procedure whereby, after the public hearing, further public questioning of the applicants takes place. Our research has uncovered no Mis-

souri case which addresses this particular issue. We turn, therefore, to general principles in analyzing and determining this case.

■ Due process requires that administrative hearings must afford the parties a fair hearing and contain rudimentary elements of fair play. A party must be given an opportunity to be heard at a meaningful time and in a meaningful manner. *Tonkin v. Jackson County Merit System Commission,* 599 S.W.2d 25, 33 (Mo.App.1980); *Jones v. State Department of Public Health and Welfare,* 354 S.W.2d 37, 39 (Mo.App. 1962). The court in *Jones* defined the notion of "fair hearing" in an administrative proceeding:

> "An administrative proceeding will not be considered a 'fair-hearing' if it lacks the rudimentary elements of 'fair play' embraced within the requirements of due process .... It cannot be said that there has been a 'fair hearing' if practices are indulged in or the hearing is conducted in a manner leading to the conclusion that a denial of justice may have resulted." (citations omitted)

*Jones v. State Department of Public Health & Welfare,* 354 S.W.2d at 39–40; *Tullock v. City of St. Charles,* 602 S.W.2d 860, 862 (Mo.App.1980).

■ Section 12 of the City of Webster Groves Zoning Ordinance requires that an application for a special use permit shall be submitted to the City Plan Commission to investigate and report as to the effect of such building or use on the community. The City Plan Commission conducted two public hearings concerning Webster College's application for a special use permit at which appellants actively participated. After receiving the City Plan Commission recommendation to approve Webster College's application, the City Council conducted a public hearing on May 5, 1981. The City Council received extensive testimony from Webster College officials, appellants, and interested residents of Webster Groves. Exhibits offered into evidence at the public hearing included the amended application of Webster College for a special use permit,

the recommendation of the Webster Groves Plan Commission, the Zoning Ordinance of Webster Groves, the City of Webster Groves Comprehensive Plan, and a complete project Study Guide prepared by Sverdrup and Parcel—Webster College's design consultants. Appellants do not allege that the public hearing failed to give them an opportunity to be heard at a meaningful time and in a meaningful manner. Indeed the record shows that the City Council continued the public hearing until every person who wished to make his or her views known had an opportunity to speak. The City Council imposed no limitations on content or time.

Appellants contend that the mere holding of the "post-hearing" on May 14, 1981 in which the public was allowed to attend but not to participate was improper and falls within the ban of *State ex rel. Steak n Shake, Inc. v. City of Richmond Heights,* 560 S.W.2d 373 (Mo.App.1977). We disagree.

On review we have carefully compared the minutes of the public hearing held on May 5 and the minutes of the post-hearing held on May 19. There were no new facts presented at the post-hearing which were not previously discussed at the public hearing. The City Council acknowledged that the Webster College proposal was an immensely complex plan. The minutes of the meetings make apparent that the purpose of the post-hearing was to allow the City Council an opportunity to discuss with Webster College officials their testimony adduced at the public hearing and the information and exhibits introduced in support of their proposal. The City Council sought only to clarify the evidence presented at the public hearing and not to adduce new evidence concerning the Webster College proposal. The minutes of the post-hearing demonstrates that the discussion was merely cumulative of the discussion and evidence presented at the public hearing. Since the City Council felt it needed a more thorough understanding of the public hearing testimony in order for them to make informed votes on the Webster College proposal it was not unreasonable to seek clarification

at a meeting limited to that purpose. Matters involving zoning and special use permits are among the most emotion-laden subjects coming before municipal governments. The record of the public hearing shows this case to be no exception to that principle.

In *Technical & Professional v. Board of Zoning,* 558 S.W.2d 798 (Mo.App.1977), the court addressed the issue whether an administrative tribunal may limit the number of witnesses who have cumulative testimony on a particular issue. What the court said in that case has equal application here.

"In *Markham v. Herrick,* 82 Mo.App. 327, 330 (1900), ..., the court stated: '[A] trial court has a discretion to limit the number of witnesses on a particular point, and unless an abuse of that discretion appears the appellate court will not interfere ... in cases of expert testimony, or ... when the introduction of a great number of witnesses tends mischievously and unnecessarily to protract the trial, the court may interfere and stop examinations which are merely cumulative in their nature....' Although this court's research has failed to reveal any cases recognizing an administrative tribunal to be possessed with discretion to limit the number of witnesses on a particular issue, the same rationale which recognizes its existence in trial courts seems equally applicable to administrative tribunals."

*Technical & Professional v. Board of Zoning,* 558 S.W.2d at 802–803. In the instant case we find no abuse of discretion. The discussion between the City Council and Webster College officials at the post-hearing was merely cumulative of the discussion held during the public hearing. No new evidence was presented at the post-hearing. Appellants and other interested residents of the City of Webster Groves gave extensive testimony at the public hearing held on May 5, 1981. The record does not show that appellants objected to the City Council decision to hold the post-hearing exclusively for the purpose of discussing the Webster College proposal solely with Webster College officials. Moreover, at the next City Council meeting on June 16, 1981, appellants did not object to the holding of the post-hearing nor did they offer any proof or evidence which they would have presented at the post-hearing if they were allowed to participate.

The findings of fact and conclusions of law for the ordinance allowing Webster College's special use permit was based solely on the evidence and the exhibits presented at the public hearing. The public hearing provided appellants an opportunity to be heard at a meaningful time and in a meaningful manner. Since the discussion at the post-hearing was cumulative in nature, we find no abuse of discretion in the City Council limiting the discussion to questions directed at Webster College officials alone.[1]

■ Appellants challenge the use of the cross-sectional view which was given to the City Council at the post-hearing. The cross-sectional view looks east from the new Studio Theatre and shows the new parking lot, the landscaped earth berm and wall, the level of Garden Avenue and existing houses on Garden Avenue. The cross-sectional view was distributed to the City Council at the post-hearing. It was not officially admitted into the record but it did become Exhibit B to the ordinance granting Webster College a special use permit. Appel-

1. The City Council was not insensitive to the concerns of the residents immediately affected by the Webster College proposal. One of the concerns voiced by the immediately abutting residential owners of Webster College was the unsightly appearance of trailer trucks and outdoor set design work which had been in effect since the Loretto Hilton Center was built. They were concerned that the addition of a new fine arts center and theatre would aggravate both the congestion and the unsightly view of an increased loading dock area and outdoor set design. The Webster College proposal called for a 10′ combination wall and earth berm around the parking lot and loading area for the new fine arts center. The ordinance, however, required that the combination wall and earth berm 15′ high in order to alleviate the aesthetic concerns of the nearby residents. This and other conditions set by the Council after the public hearing were accepted by Webster College.

lants contend that this cross-sectional view constitutes "evidence" which was improperly adduced at the post-hearing and used by the City Council in making its determination. Appellants contend that since this evidence was not presented at the public hearing, the action of the City Council in holding the post-hearing is invalid. Appellants urge that the fact the cross-sectional view became an exhibit to the ordinance granting the special use permit shows that the decision of the City Council was based, at least in part, on evidence not presented during the public hearing. We are not so convinced.

The cross-sectional view is nothing more than a pictoral means of demonstrating the line of sight view from two of the houses on the south side of Garden Avenue looking north at and over the proposed wall and earth berm. It was merely an aid to the City Council in envisioning how the loading dock areas and the parking lot would be shielded from the sight of the residents across Garden Avenue. The landscaped earth berm and wall, the parking lots and the loading dock area were already included in the Webster College site plan and project description and, thus, already in evidence at the public hearing. Since the cross-sectional view is merely a pictoral means of demonstrating facts already in evidence, it does not constitute new or additional evidence itself. As such, its use at the post-hearing was mere clarification and its use as Exhibit B to the ordinance insignificant. Appellant's first point has no merit.

■ Appellants' second point on appeal is that the granting of the special use permit to Webster College exceeded the jurisdiction of the City Council and therefore the action is invalid. The Zoning Ordinance of Webster Groves provides a list of uses which may be made of property under a special use permit including that of "colleges and universities." The Zoning Ordinance, however, does not define colleges and universities. Appellant contends on appeal that the uses authorized by the special use permit at issue here overstep the bounds of this zoning ordinance category.

Appellants contend that the principle focus of the new Studio Theatre and Fine Arts Center is to serve a variety of independent organizations in the field of the arts including the St. Louis Repertory Company, the St. Louis Opera Theatre, the Webster Symphony, the New Age College for Living, Outward Bound, the Dance Concert Society and other outside groups not operated by Webster College.

In *State v. Holekamp,* 151 S.W.2d 685 (Mo.App.1941), this court construed a similar provision in an earlier zoning ordinance of Webster Groves. In *Holekamp* the court construed the term "colleges and educational institutions." The court held that

> "the ordinance obviously contemplates schools in the usual sense, that is, institutions of learning which exist independently as such; have a definite curriculum or course of study; and are designed to serve as the medium for imparting to the students who attend them a knowledge of those things broadly covered within the field of education."

*State v. Holekamp,* 151 S.W.2d at 690.

The minutes of the May 5, 1981 public hearing is replete with testimony that the new Fine Arts Center and Studio Theatre is intended primarily to serve the needs of Webster College and its students. The President of Webster College testified that the present Fine Arts Department and the Music Department are badly overcrowded and that the Art Department is currently housed in four different buildings. A report of the Coordinating Board for Higher Education dated May 12, 1981, commented favorably with respect to the outstanding faculty and students of Webster College. However, the report commented on the inadequate facilities and serious space limitations. The Chairman of the Theatre Arts Department at Webster College testified that a student organization called The Conservatory had produced in the past year more than 24 various dramatic and musical productions, more than the various professional organizations using Webster College facilities combined.

The record is clear that the New Studio Theatre and Fine Arts Center are intended primarily to serve the expansion needs of Webster College and, thus, fall within the special use category in the Webster Groves Zoning Ordinance of "colleges and universities." The fact that some of the facilities may from time to time be utilized by cultural groups not affiliated with the college neither destroys nor detracts from the educational benefits they will bring to the college and its students. Appellants' second point is without merit.

Appellants' final point on appeal attacks the validity of the findings of fact made by the City Council when the ordinance granting the special use permit was passed. Appellants contend that the findings of fact are not the basis for the actual decision of the City Council, are insufficient on their face, and there is no competent and substantial evidence on the whole record to support them.

Section 536.090, RSMo 1978, requires that in every contested case the decision of the administrative agency "shall include or be accompanied by findings of fact and conclusions of law. The findings of fact shall be stated separately from the conclusions of law and shall include a concise statement of the findings on which the agency basis its order." At its regular meeting of June 16, 1981, the City Council of Webster Groves approved four amendments to the proposed ordinance granting Webster College a special use permit. Following the adoption of these four amendments, the City Council read into the record its proposed findings of fact and conclusions of law. The City Council then asked for public comment on the proposed ordinance and the proposed findings and conclusions. All public comments were heard. The City Council then adopted the proposed findings of fact and conclusions of law and unanimously passed the ordinance granting Webster College a special use permit.

■ Appellants' first contention on this point is that since the City Council amended the ordinance before announcing its findings of fact, the Council had already reached its decision. Appellants rely on *Stephen & Stephen Properties, Inc. v. State Tax Com'n,* 499 S.W.2d 798 (Mo.1973), and argue that this sequence of events improperly "put the cart before the horse . . . by making a decision and then later making findings of fact and conclusions of law which will support that decision." *Stephen & Stephen Properties, Inc. v. State Tax Com'n,* 499 S.W.2d at 804. This case, however, is inapposite to the facts present here. In *Stephen & Stephen Properties, Inc.,* the administrative agency did not make findings of fact until six months after its decision was made and announced, and only after the ruling had been appealed to the Circuit Court. Such is not the case here. The City Council of Webster Groves announced its findings of fact and conclusions of law and made its decision in contemporaneous fashion within the spirit of § 536.090. We fail to find error. *See Jarrett v. Hill,* 648 S.W.2d 170 (Mo.App.1983).

■ Appellants next argue that several of the City Council's findings of fact are insufficient on their face. Missouri Courts have generally required that the findings of fact in an administrative proceeding reveal the basis of the decision of the administrative agency. *Iron County v. State Tax Com'n,* 480 S.W.2d 65, 70 (Mo.1972); *May Dept. Stores v. Supervisor of Liquor Control,* 530 S.W.2d 460, 469 (Mo.App.1975). Findings of fact are not required to be made in any particular form or stated with the same degree of formality as required by judicial proceedings. All that is essential is that the findings be based upon substantial and competent evidence and be made on material facts. *May Dept. Stores v. Supervisor of Liquor Control,* 530 S.W.2d at 469. We believe the contested findings of fact are sufficient to reveal the basis of the City Council's decision. In addition to making material findings on disputed facts, the challenged findings of fact refer to specific testimony and evidence presented at the public hearing including the Webster College site plan, testimony of Webster College officials, the Sverdrup and Parcel Study

Guide, and the testimony of Thomas O'Toole, a real estate appraiser.

■ Finally, appellants argue that the decision of the City Council must be set aside on the ground that there is no competent and substantial evidence on the whole record to support the City Council's findings of fact. We disagree. Our review of this administrative proceeding is limited to a determination of whether the City Council's findings were reasonable in light of the evidence or whether the decision reached was contrary to the overwhelming weight of the evidence. We are not allowed to substitute our own judgment for that of the City Council's. We review the evidence in the light most favorable to the City Council's decision to determine whether such decision is supported by substantial and competent evidence. *State ex rel. C.C.G. Management Corp. v. City of Overland,* 624 S.W.2d 50, 54 (Mo.App.1981).

Prior to its decision granting Webster College a special use permit, the City Council had before it the following evidence: the amended application of Webster College for a special use permit including a site plan and project description, the minutes of the public hearings held before the Webster Groves Plan Commission on February 9 and April 13, 1981, the recommendation of the Webster Groves Plan Commission addressed to the City Council dated April 17, 1981, the City of Webster Groves comprehensive plan of April 1978, the Study Guide of Sverdrup and Parcel dated May 5, 1981, and the recommendation of Harland Bartholomew and Associates, Inc.—planning consultants to the City Plan Commission. In addition, the City Council heard extensive testimony at the public hearing from Webster College officials, appellants, and other interested residents of Webster Groves. A review of

the whole record shows that this evidence and testimony clearly provides substantial and competent evidence upon which the City Council made its decision.

Appellants support their contention by emphasizing the fact that the Studio Theatre and the Fine Arts Center have not been designed, that architectual details are not available, that a detailed landscaping plan has not been prepared, and that the water retention basin has not been engineered. The final design of all these portions of the development, however, are specifically required by § 1, Conditions E and K of the ordinance granting Webster College a special use permit.[2] The ordinance here contains extensive conditions and requirements to be met by Webster College and specifically requires the developer to adhere to the site plan dated May 1, 1981 and included as Exhibit A to the ordinance. These conditions and requirements are quite specific and adequately guide the City Council in their administrative oversight of the Webster College proposal. *See Treme v. St. Louis County,* 609 S.W.2d 706, 715 (Mo.App. 1980). We find substantial and competent evidence to support the City Council's action in granting Webster College a special use permit.

The judgment of the Circuit Court, which affirmed the decision of the City Council to grant Webster College a special use permit, is affirmed.

SNYDER, P.J., and DOWD, J., concur.

---

2. Conditions E and K are as follows:
   "E. A Storm Drainage Plan must be approved by Metropolitan St. Louis Sewer District and the Webster Groves City Engineer. If the final plan incorporates a water feature as indicated on the attached plan, Webster College will assume responsibility for maintenance of the water feature and all liability related to the water feature.

. . . . .

   K. A Landscaping Plan, a Parking Lot Lighting Plan, a Site Plan, a Utility Plan, Building Construction Plans, the Bompart Avenue Extension Plans, and a Traffic Circulation Plan shall be approved by the City Council."