Johnny HIGGINS, Plaintiff-Appellant,

v.

CITY OF ST. LOUIS, CIVIL SERVICE COMMISSION, et al., Defendant-Respondent.

No. 52217.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 29, 1987.

Motion for Rehearing and/or Transfer Denied Oct. 28, 1987.

Charles W. Bobinette, St. Louis, for plaintiff-appellant.

Sheryl Y. Johnson, Public Counsel, David Richard Bohm, Asst. City Counselor, St. Louis, for defendant-respondent.

STEPHAN, Judge.

Johnny Higgins appeals from a circuit court order that affirms the Civil Service Commission's decision to dismiss him from his job as an airport policeman. The Commission had "approved, affirmed and upheld" Higgins' dismissal upon finding that Higgins had failed, without valid reason, to report for duty on a day when he had been ordered to do so, that he had become argumentative when questioned about his absence by the Chief of Police and had refused to obey a direct order from the Chief. The Circuit Court found substantial and competent evidence on the record to support the Commission's decision. We affirm.

Johnny Higgins was employed by the City of St. Louis as an airport policeman at Lambert-St. Louis International Airport. He was required to work eight-hour shifts, usually five days per week, and was entitled to scheduled days off each week.

November 28, 1982, was to be one of Higgins' days off. It also happened to be the Sunday after Thanksgiving, which is usually the busiest day of the year at Lambert. According to Leroy McDaniel, the Chief of airport police, it had "... been an established fact within the department that [on] this particular day [the Sunday after Thanksgiving] everybody [would] work." Thus, when McDaniel learned less than a full contingent would be present for duty on November 28 because of scheduled days off, vacation, and compensatory time, he directed these be cancelled. Cancellation was announced at roll call on Friday November 26 and Saturday November 27. Higgins learned of the cancellation on the 27th but failed to report to work on the 28th or to call in his absence.

On December 1, 1982, Higgins met with his watch commander, Lieutenant Wells, and Chief McDaniel, two of his superiors. At this meeting, Higgins admitted that he knew he was supposed to come into work but that he chose not to do so.

At Higgins' request, a second meeting took place with the Chief on December 2,

1982. Higgins was under the impression that reports were being written about him behind his back and he wanted to see those reports. At this meeting, Chief McDaniel informed Higgins that any information would be given to him when McDaniel was ready. McDaniel then instructed Higgins to leave the office. Higgins became argumentative, used exceedingly foul language, refused to leave, and challenged the Chief to throw him out. McDaniel then told Higgins to turn in his equipment and go home; Higgins again refused.

The Assistant Airport Director, Mr. Fairris, was informed of Higgins' November 28 absence and the subsequent insubordination in McDaniel's office on December 2. On December 13, Fairris called a pretermination hearing. After reviewing Higgins' entire work record and the two latest incidents, he recommended Higgins be dismissed.

Higgins appealed the dismissal to the Civil Service Commission with the results set out above. There are four points on appeal: 1) an emergency did not exist to justify the cancellation of Higgins' day off, therefore he was not required to report for work; 2) the Commission's findings of fact and conclusions of law were not sufficient on the issue of insubordination; 3) the Commission failed to determine appropriate punishment and to evaluate Higgins' entire work record; and 4) the Commission failed to take "official notice" of its own rules on which it based its opinion.

The airport police force is a quasi-military organization with various ranks and a definite chain of command. Rules are promulgated within the organization governing its operation and the duties of its members. Each officer is furnished a set of the rules. Rule H, which was read into the record without objection, provides:

> Although an officer works a normal 8 hour day, 5 day week, he may be called at any time for an emergency duty. He shall be compensated for the time as set forth by the Airport Commission.

The rule does not define "emergency."

Higgins' first point on appeal presents two questions: 1) was there an "emergen-cy" within the meaning of Rule H such as to justify cancellation of Higgins' day off, and 2) was there substantial and competent evidence to support the Commission's finding of an emergency.

 Whether or not an emergency exists is to be determined from all the circumstances, and whether there was an emergency is a question of fact. *Adams v. Manchester Insurance and Indemnity Company,* 385 S.W.2d 359, 363 (Mo.App. 1964). The Commission heard uncontradicted testimony from those involved in the operation of the airport security force to the effect that November 28, 1982, would be an extremely busy day, if not the busiest day of the year. On cross-examination, Chief McDaniel had stated:

> The only thing I can tell you is that it's an emergency whenever we have an onslaught of people like that. It becomes an emergency with us because of the people trying to get in and out of the Airport and the traffic in and out of the Airport.

Higgins, however, asserts an "onslaught of people" cannot constitute an emergency if it is expected, predictable, or anticipated. Higgins' argument misses its mark.

The public interest plainly mandated that airport police be out in full force on the Sunday after Thanksgiving. A scheduling mistake or oversight, however, had threatened to leave the force short-handed, and therein lay the emergency. Chief McDaniel took the action these circumstances demanded when he ordered that all members of the force would work a shift on November 28. The order was ostensibly lawful and the Commission properly determined Higgins was not at liberty to disregard it. Point denied.

 Higgins' next point is that the Commission failed to make specific findings of fact on the issue of insubordination and to state a legal conclusion that such fact or facts constituted insubordination. While it is true that the words "insubordinate" or "insubordination" do not appear in the find-

ings or conclusions of the Commission, this fact is of no moment in light of evidence before the Commission and the findings and conclusions actually set forth.

In the dismissal notice from his appointing authority, Higgins was advised that his willful failure to report for duty on November 28 "and then to be insubordinate to the point of refusing to leave Chief McDaniel's office are all too much to tolorate (sic)." One of the airport work rules, which was read into the record without objection, provides that an airport police officer is guilty of "insubordinate conduct" if he or she "... [w]illfully disobeys a lawful command of a supervisor or treats with contempt or disrespectful (sic) in language or deportment toward a supervisor or officer in the execution of his departmental duties." On the basis of the evidence before it, the Commission found that Higgins "became argumentative" when talking to Chief McDaniel and that, by Higgins' own admission, "he refused to leave the Chief's office after being so directed by the Chief." Although the Commission did not use the words "insubordinate" or "insubordination", its finding is tantamount to a finding of insubordination in light of the definition set out above.

By referring to its findings of facts in its conclusions of law and relating them to an administrative rule setting forth grounds for dismissal, the Commission adequately met the requirements of § 536.090, RSMo 1986, relating to findings of fact and conclusions of law. The findings and conclusions of the Commission are adequate for this Court to determine which facts the Commission relied on, whether they are supported by substantial and competent evidence on the whole record, and whether the order was within the authority of the agency. See *Century State Bank v. State Banking Board of Missouri*, 523 S.W.2d 856, 858 (Mo.App.1975); *Greater Garden Avenue Area Association v. City of Webster Groves*, 655 S.W.2d 760, 767 (Mo.App. 1983). The findings of fact and conclusions of law relating to Higgins' insubordination are adequate in all such respects and clearly demonstrate that the Commission's order was supported by competent and substantial evidence and within the Commission's authority. Point denied.

■ In his third point, Higgins complains that the Civil Service Commission failed to make an independent determination of appropriate punishment, as *Feltz v. Hesselback*, 675 S.W.2d 60 (Mo.App.1984) requires. He also asserts the Commission erred when it excluded evidence relating to his performance of duties as a deputy city marshal prior to his becoming an airport policeman. We cannot agree that the Commission failed to make an independent assessment of appropriate punishment. The Commission made detailed findings of fact to the effect that Higgins was aware that he was required to report for duty on November 28, 1982; that he willfully failed to do so; that, when questioned about his absence by the Chief, he became argumentative and refused to obey a direct order to leave the Chief's office. The Commission's "decision" continued, *"Based upon the foregoing, it is the determination of the Civil Service Commission that a dismissal from the City Service is reasonable and proper* and does not constitute an abuse of discretion on the part of the appointing authority." (Emphasis supplied). The foregoing amounts to "an independent evaluation of punishment", as required by *Feltz*, supra, and not merely "an adoption of a non-binding recommendation ..." *Id.*

■ With respect to the exclusion of evidence pertaining to Higgins' work history when he was a deputy city marshal, we note that the proferred exhibits are documents such as "Employee Service Rating" forms and letters concerning Higgins' performance as a deputy city marshal. Although the information contained in the documents is moderately complimentary of Higgins, it relates to his performance of duties in a job very different from that of an airport policeman and, of course, to the quality of his work more than two years prior to the incidents which gave rise to these proceedings. Because of the difference of criteria and the remoteness in time, the Commission did not err in sustaining

the appointing authority's objections based on lack of relevance.

 Finally, Higgins complains that the rules of the Civil Service Commission were not introduced into evidence as required by § 536.070(6), RSMo 1986. This allegation is premised on the fact that the appointing authority failed to place in evidence or otherwise cause the Civil Service Commission to take official notice of its own Rule IX which sets forth grounds for dismissal of employees "in the competitive service." In its conclusions of law, the Commission held that Higgins' dismissal was warranted by reason of his violation of portions of the rule which were set out verbatim.

Higgins is correct in his contention that this Court may not take judicial notice of an administrative rule or regulation, *Prokopf v. Whaley,* 592 S.W.2d 819, 823 (Mo. banc, 1980), and that the omission of such rule from the record, like the omission of a city ordinance which is claimed to have been violated, would ordinarily require reversal in a case of this nature. See *Nance v. City of Raytown,* 710 S.W.2d 918 (Mo. App.1986).

Higgins failed to note, however, that Personnel Administrative Regulation No. 105 of the City of St. Louis was admitted into evidence without any objection from him. That regulation provides in part:

> Formal Charge—Disciplinary actions in the form of suspensions, demotions, reductions in pay, and dismissals shall be based on one or more of the following reasons provided by Rule IX of the Rules of the Departmant (sic) of Personnel and Civil Service Commission: ...

From this point on, the regulation sets forth the same grounds for disciplinary action as contained in the portion of Rule IX quoted in the Commission's conclusions of law. By its specific reference to Rule IX and its parroting of the relevant portions of the Rule, Regulation 105's inclusion in the record served the same purpose as the taking of "official notice" of the Rule, which the Commission is clearly authorized to do. Section 536.070(6), RSMo 1986, *Prokopf v. Whaley,* supra. As in *Prokopf,* the record sufficiently presents the Rule for the purposes of the Commission's decision and this Court's review thereof.

Affirmed.

GARY M. GAERTNER, P.J., and SIMON, J., concur.